UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| SHAMEKA BOLTON, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>    v.<br>U.S. NURSING CORP., and DOES 1 through 50, inclusive,<br>               Defendants.<br>_____/ | No. C 12-04466 LB<br><br>ORDER DENYING MOTION TO REMAND<br><br>[ECF No. 7] |

## I. INTRODUCTION

Shameka Bolton filed this lawsuit in Alameda County Superior Court, alleging that Defendant U.S. Nursing Corp. ("U.S. Nursing") violated California wage-and-hour laws applicable to her and other U.S. Nursing employees placed in health care facilities to temporarily replace staff involved in labor disputes. Compl., ECF No. 1 at 10.[1] U.S. Nursing removed the case to this court pursuant to 28 U.S.C. § 1332, alleging that this court had original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") . *See* Notice of Removal, ECF No. 1 at 1-7. Bolton moved to remand the action to state court for failure to meet CAFA's amount in controversy requirement. *See* ECF No. 7. The court finds that U.S. Nursing has established to a legal certainty that the amount in controversy

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

exceeds $5 million and denies Bolton's motion to remand.

## I. FACTUAL AND PROCEDURAL HISTORY

U.S. Nursing is a temporary service employer based in Colorado that provides replacement staff to healthcare providers during strikes and other labor disputes. Compl., ECF No. 1, ¶¶ 1, 4, 10. U.S. Nursing placed Plaintiff Shameka Bolton in at least four health care facilities between January 2011 and the present. *Id.* ¶ 3. Bolton, a California resident, seeks to represent a class of "[a]ll present and former U.S. nursing employees who were placed to work in California health care facilities on a temporary basis during labor disputes at any time during the four years preceding the filing of this action through the present" (collectively, "Replacement Staff"). *Id.* at 3, 13. In addition, Bolton seeks to represent a subclass of those Replacement Staff who had a 30-minute meal period automatically deducted from their time records. *Id.*

Bolton alleges six claims: U.S. Nursing failed to (1) pay wages for time Replacement Staff spent in work-mandated transit, (2) pay them for working during meal periods, (3) provide them with legally-mandated meal periods, (4) pay wages on a daily basis as required by California Labor Code section 201.3, and (5) provide accurate wage statements, and (6) U.S. Nursing violated California's unfair competition law[2]. Compl. ¶¶ 21-59. Finally, in her seventh claim, Bolton seeks declaratory[3] relief based on claims one through five. Compl. ¶¶ 60-63.

In the Jurisdiction and Venue section of the complaint, Bolton alleges the following:

> [T]he individual claims of Plaintiff and the Replacement Staff as defined herein, including each Replacement Staff's pro-rata share of the attorneys' fees and all other requested relief, are under the $75,000 jurisdictional threshold for federal court, and the aggregate claims, including attorneys' fees and all other requested relief, are less than the $5 million required to establish federal jurisdiction under the Class Action Fairness Act of 2005.

*Id.* ¶ 8. The prayer for relief does not mention the amount in controversy. *See id.* at 23.

The complaint makes several factual allegations that are important to the instant motion. First, Bolton alleges that following transit time, "the Replacement Staff work 12-hour shifts." *Id.* ¶ 11.

---

[2] The Complaint erroneously labels this the Seventh Cause of Action.

[3] The Complaint erroneously labels this the Eighth Cause of Action.

Second, Bolton alleges that, "Plaintiff and members of the Subclass worked 12-hour shifts, not including the time they were required to spend on Defendants' transportation." *Id.* ¶ 32. Finally, Bolton alleges that "[d]uring all relevant times, U.S. Nursing's standard pay period has been Sunday to Saturday with the exception of post-strike assignments. At no time did U.S. Nursing pay any members of the Class at the end of each day worked. U.S. Nursing actually only paid the Replacement Staff their first paycheck the next Friday following the week worked at the earliest." *Id.* ¶ 39; *see also id.* ¶ 13.

Thirty days after the complaint was filed, U.S. Nursing filed an Answer in state court and removed the action to federal court. *See* Notice of Removal, ECF No. 1 at 1, 38. U.S. Nursing's notice of removal alleges that the amount in controversy exceeds $5 million. *See id.* ¶ 7. In support, U.S. Nursing submits the declaration of Catherine J. Margheim, its Chief Financial Officer. Margheim Decl., ECF No. 3, ¶ 1. Margheim states:

> According to U.S. Nursing's business records, U.S. Nursing has placed at least 2,241 different employees with client health care facilities located in California between June 10, 2010 and July 7, 2012, to perform temporary services. Each of those assignments ranged from one to five days in length and is a completed assignment. In almost all cases, the employees were scheduled to work 12-hour shifts. During this time period, the base hourly rate of pay for these employees ranged from $50.00 to $60.00.

*Id.* ¶ 6.

Using these figures, as well as the allegations in Bolton's complaint, U.S. Nursing calculates the amount in controversy on the waiting time penalty claim (claim four) as being at least $8,067,600. Notice of Removal, ECF No. 1, ¶ 20(c). U.S. Nursing arrives at this figure by calculating a minimum daily rate based on a 12-hour shift at $50.00 per hour, multiplying the daily rate by a minimum 6-day waiting time penalty, and multiplying this figure by the minimum 2,241 putative class members. *Id.* (12 * $50 * 6 * 2,241 = $8,067,600).

On September 13, 2012, Bolton moved to remand the action to state court. Mot., ECF No. 7. On October 18, 2012, the parties appeared before this court for oral argument on that motion.[4]

---

[4] In support of its opposition, U.S. Nursing requests the court take judicial notice of a Senate Committee on the Judiciary Report, 109th Congress, S. Rep. No. 109-14 (2005). Because the Senate

UNITED STATES DISTRICT COURT
For the Northern District of California

## II. LEGAL STANDARDS

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441. Federal courts, however, are courts of limited jurisdiction. *See, e.g., Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As a result, the removal statute is construed strictly against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Under CAFA, federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs; (2) the class contains 100 or more putative class members; and (3) there is at least minimal diversity between the parties.[5] 28 U.S.C. §1332(d). "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (quoting *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam)); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Thus, U.S. Nursing bears the burden to establish that this court has jurisdiction over Bolton's claims.

The Ninth Circuit has identified three different burdens of proof that a removing defendant may have to meet with regard to the amount in controversy requirement; which burden applies depends on the plaintiff's allegations. *See Abrego Abrego*, 443 F.3d at 683. First, if the complaint alleges

---

Report is a public record capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned, the court may properly take judicial notice of the undisputable facts contained in it. *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201(b). Because the court does not rely on this document, however, it denies U.S. Nursing's request as moot.

[5] The amount in controversy is the only jurisdictional issue the parties dispute.

damages that are above the jurisdictional minimum, then CAFA's amount in controversy is presumptively satisfied unless it appears a legal certainty that the claim is actually lower than the jurisdictional minimum. *Id.* at 683 n.8. Second, where it is not clear from the face of the complaint whether the plaintiff seeks more or less than the amount in controversy, the party seeking removal must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Id.* at 683. Third, where the complaint specifically alleges that the plaintiff seeks less than the jurisdictional minimum, the defendant can defeat a motion to remand only by proving to a legal certainty that the amount in controversy exceeds this amount. *Id*. (discussing the scenario without deciding the burden of proof). This "legal certainty" standard was first articulated with regard to CAFA cases in *Lowdermilk v. U.S. Bank National Ass'n.*, 479 F.3d 994, 999 (9th Cir. 2007). There, the Ninth Circuit held that where the plaintiff pleaded "damages 'in total, less than five million dollars,'" as well as attorneys' fees, the defendant would have to establish federal jurisdiction to a legal certainty, unless the plaintiff had pleaded in bad faith. *Id.* at 997-98.

### III. DISCUSSION

**A. The Applicable Burden of Proof**

The parties disagree about the appropriate burden of proof that U.S. Nursing needs to meet in order to avoid remand. Bolton argues that the legal certainty standard is appropriate because she has pleaded an amount in controversy less than $5 million, Mot., ECF No. 7 at 5, while U.S. Nursing argues that the preponderance of the evidence standard should apply, Opp'n, ECF No. 11 at 4-6. According to U.S. Nursing, "the 'legal certainty' standard that Plaintiff invokes has been superseded by a recently-enacted statute," and does not apply where there is evidence of bad faith. *Id.* at 4. The court finds neither argument persuasive.

**1. Jurisdiction and Venue Clarification Act of 2011**

U.S. Nursing first argues that the Jurisdiction and Venue Clarification Act of 2011 (the "Act"), 28 U.S.C. § 1446(c)(2), states that the preponderance of the evidence standard applies where Plaintiff seeks a money judgment and the State practice permits recovery of damages in excess of the amount demanded. *Id.* at 4-5. The court finds this statute inapplicable. As U.S. Nursing acknowledges in a footnote, the Act applies only when "removal of a civil action is sought on the

basis of the jurisdiction conferred by section 1332*(a)*" (diversity jurisdiction), not section 1332*(d)*, the Class Action Fairness Act. *See* 28 U.S.C. § 1446(c)(2) (emphasis added); Opp'n at 5 n.3. U.S. Nursing argues that "logic dictates that it applies to CAFA cases as well." *Id.* at 5 n.3 (citing *Valdez v. Metro. Prop. & Cas. Ins. Co.*, No. CIV 11-0507 JB/KBM, 2012 WL 1132374, at *15 (D.N.M. Mar. 19, 2012); *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1072 (8th Cir. 2012)). Bolton counters that the statute should be read according to its plain language. Reply, ECF No. 15 at 7 (quoting *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

U.S. Nursing's plea to logic is insufficient to allow this court to rewrite the plain language of the statute, which creates exceptions to the legal certainty standard that are specifically limited to traditional diversity cases. The cases U.S. Nursing cites just stand for the general proposition that traditional diversity cases are instructive in determining the amount in controversy in a CAFA action. But these cases do not apply the Act in a CAFA case, and U.S. Nursing cites no other cases that do.

**2. Bad Faith**

U.S. Nursing's second argument is similarly unpersuasive. U.S. Nursing argues that the legal certainty standard does not apply because Bolton's amount in controversy allegation is made in bad faith in that Bolton's factual allegations contradict her amount in controversy claim, and she refused to stipulate that she will seek less than $5 million. *See* Opp'n, ECF No. 11 at 4-6 (quoting *Lowdermilk*, 479 F.3d at 998-99).

"Bad faith would alter the applicable standard of review where a Plaintiff pleads in such a way as to avoid federal jurisdiction, but does so knowing that the claims made actually seek an amount above the jurisdictional threshold." *Bonnel v. Best Buy Stores, L.P.*, No. C-12-2285 EMC, 2012 WL 3195081, at *4 (N.D. Cal. Aug. 7, 2012); *see Lowdermilk,* 479 F.3d at 1001. But as the court recognized in *Bonnel*, in order to prove bad faith, the defendant must prove that the plaintiff is actually seeking more than $5 million, which essentially collapses the bad faith and amount in

controversy inquiries. *Id.* As a result, the defendant must prove plaintiff's bad faith to a legal certainty to justify removal. *Id.*

U.S. Nursing argues that Bolton is forum-shopping by manipulating the jurisdictional rules to secure a state forum and that this is bad faith. *Id.* at 5-6 (citing *Lowdermilk*, 479 F.3d at 999; *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995) ("[Plaintiffs] may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. Such manipulation is surely characterized as bad faith.")). U.S. Nursing essentially argues that the factual allegations in the complaint, taken as true, prove that the amount in controversy is greater than $5 million and that Bolton's allegations otherwise constitute bad faith. *Id.*

But Bolton's allegations do not contradict her amount in controversy allegation. U.S. Nursing asserts that the amount in controversy exceeds $5 million on the waiting time penalty claim alone. With regard to this claim, U.S. Nursing calculates the amount in controversy as the product of four variables: the number of class members, the minimum duration of the class members' shifts, class members' minimum hourly wage, and the minimum waiting period. *See* Notice of Removal, ECF No. 1, ¶¶ 13-21. The complaint, however, does not allege the class members' hourly wages. As a result, the factual allegations in the complaint do not contradict Bolton's amount in controversy allegation, and the court finds no evidence of bad faith.

Nor does the court find bad faith in Bolton's refusal to sign a stipulation that she will seek less than $5 million. In support of its opposition to the instant motion, U.S. Nursing includes the declaration of its attorney Thomas Geidt, who states that he asked Bolton to stipulate that she would not pursue more than $5 million in total damages but that Bolton did not reply to the offer. *Id.* at 4, 6; Geidt Declaration, ECF No. 12 at 2. U.S. Nursing argues that the failure to stipulate to damages below the jurisdictional threshold evinces bad faith. In support, U.S. Nursing cites Seventh Circuit case law holding that amount in controversy disclaimers are meaningless unless they are binding. *See* Opp'n, ECF No. 11 at 6 (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006), *cert. denied*, 127 S.Ct 2952 (2007)). In reply, Bolton points to cases from this circuit and this court

that "expressly decline[] to find that a refusal to stipulate to damages below the jurisdictional amount is even persuasive in evaluating the worth of the claims in a complaint." *Conrad Associates v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 (N.D. Cal. 1998) (citing *Valle v. State Farm Mutual Automobile Ins.*, 1997 WL 564047 (N.D. Cal.1997) and *Miller v. Michigan Millers Ins. Co.*, No. C-96-4480 MHP, 1997 WL 136242 (N.D. Cal.1997)); *see also MIC Philberts Investments v. American Cas. Co. of Reading, Pa.*, 2012 WL 2118239, at *7 (E.D. Cal. June 11, 2012); *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616 AWI, 2010 WL 2793650, at *4-5 (E.D. Cal. July 14, 2010). As the court noted in *Schiller*, "[i]f a plaintiff's refusal to stipulate was sufficient to satisfy that burden, a defendant could force the plaintiff to choose between stipulating in a manner prejudicial to his interests (agreeing to a limitation of damages) or litigating in a forum that he did not choose." 2010 WL 2793650, at *5. The court finds this reasoning persuasive and agrees with the weight of in-circuit authority that a plaintiff's refusal to stipulate to damages less than the amount in controversy is not evidence of bad faith forum shopping. Because the court finds no evidence of bad faith on Bolton's part, U.S. Nursing must prove to a legal certainty that the amount in controversy exceeds $5 million.

### B. U.S. Nursing Satisfies the Legal Certainty Standard

The legal certainty standard sets "a high bar for a party seeking removal, but it is not insurmountable." *Lowdermilk*, 479 F.3d at 1000. The standard requires a defendant to produce enough "concrete evidence," allowing the court "to estimate with certainty the actual amount in controversy." *Id.* at 1001. The Ninth Circuit has repeatedly found that allegations based on unsupported assumptions fail to pass the test. *See id.* (burden not satisfied where defendant assumed the number of class members and the average damages per putative class member); *see also Cifuentes v. Red Robin, Int'l, Inc.*, No. C-11-5635-EMC, 2012 WL 693930, at *4 (N.D. Cal. Mar. 1, 2012) (burden not satisfied where defendant assumed that all employees in the proposed class failed to receive timely wages and that all terminated employees failed to receive their final wages).

As discussed above, U.S. Nursing bases its amount in controversy claim solely on Bolton's claim for failure to pay timely wages. U.S. Nursing provides evidence of the number of putative class

members, the length of their assignments, the length of their shifts,[6] and their base hourly rate of pay. In addition to these variables, U.S. Nursing relies on the allegations in the complaint that California law requires it to pay employees at the end of each day, Compl. ¶ 37, and that "[d]uring all relevant times, U.S. Nursing's standard pay period has been Sunday to Saturday . . . . At no time did U.S. Nursing pay any members of the Class at the end of each day worked. U.S. Nursing actually only paid the Replacement Staff their first paycheck the next Friday following the week worked at the earliest," *id.* ¶ 39. U.S. Nursing assumes that each putative class member worked only a single 12-hour shift, made the minimum base rate of pay, and each class members' pay was delayed for six days – the minimum amount of delay consistent with Bolton's allegations.

The crux of Bolton's motion to remand is her assertion that U.S. Nursing improperly relied on the allegations in the complaint, rather than "concrete evidence," to establish that the amount in controversy exceeds the jurisdictional threshold. *See* Mot., ECF No. 7 at 5. According to Bolton, "[nothing in the Federal Rules of Civil Procedure or case law . . . suggests that allegations in an unverified complaint can act as evidentiary admissions upon which the amount in controversy can be based to a legal certainty." Reply, ECF No. 15 at 6. If Bolton is correct, then U.S. Nursing's calculations are flawed because they rely on the complaint to establish the minimum 6-day waiting period.

In support of her position, Bolton cites cases for the proposition that a defendant cannot establish the amount in controversy by relying on the allegations in the plaintiff's complaint.[7] But the cases do not support her position. For example, Bolton cites *Cifuentes*, 2012 WL 693930, at *5, as

---

[6] U.S. Nursing's evidence indicates that the employees were scheduled to work 12-hour shifts "[i]n almost all cases." Margheim Decl., ECF No. 3, ¶ 6. Although the qualifier 'almost' introduces some imprecision into U.S. Nursing's calculations, the calculations also assume the minimum value possible for all other variables, and the amount in controversy still substantially exceeds the jurisdictional minimum. As such, Margheim's slight qualification does not alter the court's conclusion.

[7] Bolton cites many more cases that stand for the uncontroversial proposition that a defendant will not meet the legal certainty standard by relying on unsupported assumptions. *See, e.g.,* Mot, ECF No. 7 at 5-7; Reply, ECF No. 15 at 5-6. The relevant issue is whether the defendant can rely on the allegations in plaintiff's complaint as evidence to justify removal.

C 12-04466 LB (ORDER DENYING MOTION TO REMAND)　　9

holding that "reliance on allegations also does not satisfy the standard." Mot., ECF No. 7 at 5. But as U.S. Nursing points out in opposition, the *Cifuentes* holding is not so straight forward. *See* Opp'n, ECF No. 11 at 8 n.7. There, the defendant "based its calculations of the potential exposure for [class members] on Plaintiff's assertions that his claims regarding an 8-day delay for payment of final wages was typical of the class." *Cifuentes*, 2012 WL 693930, at *3. Thus, the *Cifuentes* defendant erred in attributing the plaintiff's individual damages to the entire class based on the single allegation that plaintiff's damages were "typical." *Id.* The *Cifuentes* court never criticized the defendant for relying on the allegations in the complaint; instead, its criticism was directed to the erroneous extrapolation. In contrast, U.S. Nursing relies on the complaint's unequivocal allegations that the entire class was subjected to a minimum payment delay of at least six days. *See* Compl. ¶ 39.

Bolton repeatedly cites *Green v. Staples Contract & Commercial, Inc.*, No. CV08-7138 SVWJWJX, 2008 WL 5246051, at *4-5 (C.D. Cal. Dec. 10, 2008). *See* Mot., ECF No. 7 at 5; Reply, ECF No. 15 at 5. But *Green* does not address the issue of whether plaintiff's allegations can be considered evidence of the amount in controversy. There, the court rejected the defendant's calculations because, like in *Cifuentes*, it assumed that all members of the class missed the same number of meal and rest breaks as the plaintiff did. *Id.* at *4. Similarly, Bolton quotes language in *Belser v. Progressive Halcyon Ins. Co.*, 2008 WL 1817358, at *2 (W.D. Ala. Apr. 22, 2008) criticizing removal based on "assumptions and allegations–not evidence" about the amount in controversy. But that quotation – when read in the context of that case – is about an insurance company's reliance on a damages figure sought in a previous lawsuit (as opposed to the damages sought in the current one) and has nothing at all to do with U.S. Nursing's reliance on allegations in Bolton's complaint. *See* Reply, ECF No. 15 at 5.

In support of the same point, Bolton cites *Fletcher v. Toro Co.*, which also addressed the evidence a defendant can use in establishing the amount in controversy. No. 08-cv-2775 DMS (WMc), 2009 WL 8405058, at *6-10 (S.D. Cal. Feb. 3, 2009). At points in that opinion, the court criticized the defendant's calculations as lacking evidentiary support even though they appeared to be based solely on allegations in the complaint. *See, e.g., id.* at *8. The calculations lacked evidentiary support, however, not because they were based upon the complaint's allegations, but

because there were flaws in the logic underlying the defendant's calculations and the defendant set self-serving values for some of the variables. *Id.* at *8-9. In fact, in estimating the class size, the court stated it "does not find fault with Defendant's estimates," which were based "on the Complaint's sweeping assertions." *Id.* at *7. Accordingly, the court finds that *Fletcher* suggests that a defendant may rely on the allegations in the complaint in establishing the amount in controversy.

Bolton also cites *Montalvo v. Swift Transp. Corp.*, for the same point. No. 11-CV-1827, 2011 WL 6399457, at *4 (S.D. Cal. Dec. 19, 2011). *See* Reply, ECF No. 15 at 5. There, the defendant failed to prove to a legal certainty that the amount in controversy was below the jurisdictional threshold because its calculations were based on "estimates that are not supported by evidence or allegations in the [complaint]". Because the estimates could have been supported by allegations in the complaint, *Montalvo* also supports U.S. Nursing's reliance on Bolton's allegations.

In its opposition, U.S. Nursing argues that not only is it appropriate to rely on the allegations in the complaint, but also that "the Court must consider all facts alleged in the complaint as true." *See* Opp'n, ECF No. 11 at 8 (citing *Lowdermilk*, 479 F.3d at 998-99; *Campbell v. Vitran Express, Inc.*, 471 Fed. App'x 646 (9th Cir. 2012) ("In determining the amount in controversy, we consider not only the facts alleged in the complaint . . . ."); *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) ("for purposes of remand, the court must accept as true *plaintiff's* allegations as plead in the Complaint . . . .); *Levine v. BIC USA, Inc.*, No. 07cv1096-LAB (RBB), 2007 WL 2406897, at *2 (S.D. Cal. Aug. 20, 2007) (same). All of these cases stand for the proposition cited. In addition, the court notes that courts in this district have accepted as true a complaint's allegations in deciding whether (to a legal certainty) the amount in controversy is sufficient to defeat a motion to remand. *See, e.g.*, *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4-6 (N.D. Cal. Mar. 1, 2012) (discussing cases).

At the October 17, 2012 hearing in this matter, Bolton's counsel argued that remand is appropriate even if a defendant may base removal on a complaint's allegations. Bolton argued (for the first time) that U.S. Nursing's logic is flawed because it erroneously inferred from the complaint that the minimum six-day payment delay applied to Replacement Staff both during the course of an

assignment and also after their assignment ended. Bolton contends that Replacement Staff may have been paid all wages due on the final day of an assignment. Under Bolton's theory, it is possible that the amount in controversy could be lower than $5 million if U.S. Nursing timely paid the Replacement Staff on their final day of an assignment, but made them wait six days for payment during multi-week assignments.

The complaint does not support Bolton's new theory. In a section titled "FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS," the complaint alleges: "For this work, the Replacement Staff are paid on a weekly basis, not receiving their wages for the week worked until the following week, at the earliest." Compl., ECF No,. 1 at 12, ¶ 13. This allegation's use of the phrase "at the earliest" provides solid support for U.S. Nursing to base its calculations on a minimum six-day waiting period. Nor is this allegation is contradicted or qualified elsewhere in the complaint. The only similar allegation states: "During all relevant times, U.S. Nursing's standard pay period has been Sunday to Saturday with the exception of post-strike assignments. At no time did U.S. Nursing pay any members of the Class at the end of each day worked. U.S. Nursing actually only paid the Replacement Staff their first paycheck the next Friday following the week worked at the earliest." *Id.* ¶ 39. Consequently, Bolton's distinction between ongoing and ending assignments is not supported by her allegations.

Accordingly, the court finds that U.S. Nursing appropriately relied on the allegations in the complaint regarding the minimum six-day waiting period. The other variables in U.S. Nursing's amount in controversy calculation are conservative and based upon concrete evidence. Accordingly, the court finds that U.S. Nursing has established to a legal certainty that the amount in controversy exceeds $5 million and DENIES Bolton's motion to remand.

### IV. CONCLUSION

For the reasons previously stated, the court DENIES Bolton's motion to remand. This disposes of ECF No. 7.

**IT IS SO ORDERED.**

Dated: October 21, 2012

_____
LAUREL BEELER
United States Magistrate Judge