1  CHAVEZ & GERTLER LLP
   Jonathan E. Gertler (SBN 111531)
2  Dan L. Gildor (SBN 223027)
   42 Miller Avenue
3  Mill Valley, California 94941
   Tel:    (415) 381-5599
4  Fax:    (415) 381-5572
   jon@chavezgertler.com
5  dan@chavezgertler.com

6  ANDRUS ANDERSON LLP
   Lori E. Andrus (SBN 205816)
7  Jennie Lee Anderson (SBN 203586)
   155 Montgomery Street
8  San Francisco, CA 94104
   Tel:    (415) 986-1400
9  Fax:    (415) 986-1474
   lori@andrusanderson.com
10 jennie@andrusanderson.com

11 *Attorneys for Plaintiff SHAMEKA BOLTON*
   *and the Proposed Settlement Class and Subclass*

12

13                    **UNITED STATES DISTRICT COURT**

14                   **NORTHERN DISTRICT OF CALIFORNIA**

15 SHAMEKA BOLTON, individually and on      )  Case No:  C-12-04466 LB
   behalf of all others similarly situated,  )
16                                            )  CLASS ACTION
                         Plaintiff,           )  _____
17                                            )  **PLAINTIFF'S NOTICE OF <u>UNOPPOSED</u>**
              vs.                             )  **MOTION, MOTION, AND**
18                                            )  **MEMORANDUM IN SUPPORT OF**
   U.S. Nursing Corp., and DOES 1 through 50, )  **MOTION FOR PRELIMINARY**
19 inclusive,                                 )  **APPROVAL OF CLASS ACTION**
                                              )  **SETTLEMENT**
20                       Defendants.          )
                                              )  Date:   June 6, 2013
21                                            )  Time:   9:30 a.m.
                                              )  Place:  Courtroom C
22                                            )  Judge:  The Hon. Laurel Beeler
                                              )
23                                            )  **E-FILED**
                                              )
24                                            )
                                              )
25 _____)

26

27

28

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 2

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

III.    THE TERMS OF THE PROPOSED SETTLEMENT ...................................... 4

        A.      CERTIFICATION OF THE SETTLEMENT CLASS AND SUBCLASS ............4

        B.      THE BENEFIT CONFERRED ON THE CLASS...........................................4

        C.      VALUE OF THE SETTLEMENT TO CLASS MEMBERS ...............................5

        D.      SETTLEMENT ADMINISTRATION .........................................................6

        E.      CLASS NOTICE .....................................................................................6

        F.      RIGHT TO CORRECT INFORMATION, OBJECT OR OPT OUT....................6

        G.      RELEASE OF CLAIMS ............................................................................7

        H.      ATTORNEYS' FEES AND COSTS ............................................................7

        I.      TAX CONSEQUENCES ...........................................................................8

        J.      CLASS REPRESENTATIVE PAYMENTS ...................................................8

        K.      NO EFFECT ON OTHER PENDING CASES ...............................................8

IV.     ARGUMENT ........................................................................................................ 8

        A.      THE STANDARD FOR REVIEW OF A CLASS ACTION
                SETTLEMENT ........................................................................................8

        B.      THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
                CLASS SETTLEMENT ...........................................................................10

                1.      Conditional Certification of the Proposed Class and Subclass Is
                        Appropriate ................................................................................10

                        a)      The Class Is Numerous and Ascertainable ....................10

                        b)      Plaintiff's Claims Are Typical .......................................11

                        c)      Plaintiff Will Adequately Protect the Interests of the Class ...........11

                        d)      Common Issues Predominate..........................................11

                        e)      A Class Action Is Superior to Individual Litigation ......13

                2.      The Settlement Is the Product of Arm's-Length, Informed
                        Negotiations ...............................................................................13

                3.      The Proposed Notice and Notice Plan Are More than Sufficient.............14

NOTICE OF <u>UNOPPOSED</u> MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
*Case No.:* C-12-04466 LB

4.    The Settlement Is Fair and Reasonable Considering the Benefits Conferred, the Case Value, and Significant Litigation Risks ....................15

5.    The Proposed Class Representative Payment Is Reasonable....................17

6.    There Are No Indicia of Collusion or Unfairness......................................18

V.    PROPOSED SCHEDULE FOR REMAINING PROCEDURES.................................... 19

VI.    CONCLUSION.................................................................................................... 19

NOTICE OF <u>UNOPPOSED</u> MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
*Case No.: C-12-04466 LB*

1

## TABLE OF AUTHORITIES

2

CASES

3

*Austin v. Pennsylvania Dept. of Corr.*
    876 F. Supp. 1437 (E.D. Pa. 1995) ....................................................................14

4

5

*Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA
    2009 WL 587844 (S.D. Cal., March 6, 2009) .....................................................18

6

*Behrens v. Wometco Enterprises, Inc.*
    118 F.R.D. 534 (S.D. Fla. 1988) ........................................................................17

7

8

*Churchill Village, L.L.C. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) .............................................................................15

9

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) .............................................................................8

10

11

*Consolidated Rail Corp. v. Town of Hyde Park*
    47 F.3d 473 (2d Cir. 1995) ................................................................................10

12

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) ...........................................................................................15

13

14

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) .............................................................................11

15

*Gen. Tel. Co. of Sw. v. Falcon*
    457 U.S. 147 (1982) ...........................................................................................11

16

17

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ...................................................................9, 10, 13

18

*Hopson v. Hanesbrands, Inc.*, No. CV-08-0844
    2088 WL 3385452 (N.D. Cal. Aug. 8, 2008) ......................................................9

19

20

*In re Bluetooth Headset Products Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) .............................................................................18

21

*In re Mercury Interactive Corp. Securities Litig.*
    618 F.3d 998 (9th Cir. 2010) ...............................................................................7

22

23

*In re Mexico Money Transfer Litigation (Western Union and Valuta)*
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...............................................................18

24

*In re Rubber Chems. Antitrust Litig.*
    232 F.R.D. 346 (N.D. Cal. 2005) .......................................................................11

25

26

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................10

27

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
    571 F.3d 953 (9th Cir. 2009) .............................................................................12

28

*In re: Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) ..............................................................................17

*IUE-CWA v. Gen. Motors Corp.*
  238 F.R.D. 583 (E.D. Mich. 2006) ......................................................................14

*Kakani v. Oracle Corp.*, No. C06-06493 WHA
  2007 WL 1793774 (N.D. Cal. June 19, 2007) ....................................................17

*Kamar v. Radio Shack Corp.*
  254 F.R.D. 387 (C.D. Cal. 2008) ........................................................................12

*Kaufman v. American Exp. Travel Related Services Co., Inc.*
  264 F.R.D. 438 (N.D. Ill. 2009) ..........................................................................19

*Kurihara v. Best Buy Co., Inc.*, No. C 06-01884 MHP
  2007 WL 2501698 (N.D. Cal. Aug. 30, 2007) ....................................................12

*Mann & Co. v. C-Tech Indus., Inc.*, No. 08-11312-RGS,
  2010 WL 457572 (D. Mass. Feb. 5, 2010) ..........................................................18

*Mitchell v. Robert DeMario Jewelry, Inc.*
  361 U.S. 288 (1960) ............................................................................................13

*Mullen v. Treasure Chest Casino, LLC*
  186 F.3d 620 (5th Cir. 1999) ........................................................................11, 13

*Murillo v. Pacific Gas & Elec. Co.*
  266 F.R.D. 468 (E.D. Cal. 2010) ..........................................................................9

*Murillo v. Texas A&M Univ. Sys.*
  921 F. Supp. 443 (S.D. Tex. 1996) ........................................................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................9

*Officers for Justice v. Civil Service Comm. of San Francisco*
  688 F.2d 615 (9th Cir. 1982) ................................................................................8

*Romero v. Producers Dairy Foods, Inc.*
  235 F.R.D. 474 (E.D. Cal. 2006) ........................................................................11

*Spencer v. No Parking Today, Inc.*, No. 12 CIV. 6323 ALC AJP
  2013 WL 1040052 (S.D.N.Y. Mar. 15, 2013) ....................................................13

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ........................................................................17, 18

*Sullivan v. Kelly Services, Inc.*
  268 F.R.D. 356 (N.D. Cal. 2010) ........................................................................12

*Van Bronkhorst v. Safeco Corp.*
  529 F.2d 943 (9th Cir. 1976) ................................................................................8

*Van Vranken v. Atlantic Richfield Co.*
   901 F. Supp. 294 (N.D. Cal. 1994) ........................................................................17

*Wal-Mart Stores, Inc. v. Dukes*
   131 S. Ct. 2541 (2011) ...........................................................................................13

*White v. Experian Information Solutions, Inc.*
   803 F. Supp. 2d 1086 (C.D. Cal. 2011) ..................................................................17

*Whitehorn v. Wolfgang's Steakhouse, Inc.*
   275 F.R.D. 193 (S.D.N.Y. 2011) ............................................................................13

*Williams v. Vukovich*
   720 F.2d 909 (6th Cir. 1983) .................................................................................14

**R**ULES

Fed. R. Civ. P. 23 ...............................................................................................10, 15

**O**THER **A**UTHORITIES

Federal Judicial Center
   *Managing Class Action Litigation:  A Pocket Guide for Judges* (2005) .................17

Federal Judicial Center
   *Manual for Complex Litigation* (4th ed. 2004) ....................................................9, 10

H. Newberg & A. Conte
   4 *Newberg on Class Actions* (4th ed. 2002) .....................................................8, 9, 10

## NOTICE AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 6, 2013 at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom C in the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California 94102, Plaintiff Shameka Bolton ("Plaintiff") will move, and hereby does move, the Court for an Order that: 1) preliminarily approves the class action settlement with Defendant U.S. Nursing Corp. ("U.S. Nursing" or "Defendant"); 2) conditionally certifies a class and subclass consisting of Defendant's current and former non-exempt employees who were placed to work in California health care facilities on a temporary basis during labor disputes; 3) appoints Jonathan Gertler and Dan Gildor of Chavez & Gertler LLP and Lori E. Andrus of Andrus Anderson LLP as Class Counsel; 4) appoints Shameka Bolton as the Class Representative; 5) appoints a settlement administrator; 6) approves the form of notice of the settlement and the procedure for providing such notice; 7) sets a briefing schedule for Plaintiff's motions for attorneys' fees and costs and for final approval; and 8) schedules a final fairness hearing.

Such an order is appropriate because the proposed settlement meets the legal standard for preliminary approval and is in the best interests of the class.  The proposed notice explains the settlement terms in a clear and straightforward manner; the proposed notice procedures provide the best practicable notice to the class; and class members will have an opportunity to dispute the calculation of settlement awards and object to the settlement.

This motion is based on this Notice of Motion and Motion, the following points and authorities, the Declarations of Jonathan E. Gertler and Lori E. Andrus and exhibits thereto, including the settlement agreement and proposed class notice; all pleadings and papers filed in this case; and on such other further written and oral argument and authorities as may be presented at or before the hearing on this matter.

///

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Shameka Bolton hereby moves the Court for an order preliminarily approving a non-reversionary class action settlement to resolve claims on behalf of more than 2,500 nurses who have been deployed by Defendant U.S. Nursing Corp. ("U.S. Nursing") to hospitals in California to cross picket lines and temporarily replace striking staff.  The proposed settlement provides approximately $1,777,000 in cash payments to class members, employer-side payroll taxes, a service award to Plaintiff, settlement administration costs, and civil penalties to the state. The settlement was finally signed by all parties on April 30, 2013 after arm's-length negotiations overseen by the Hon. Edward A. Infante (Ret.) of JAMS.

As demonstrated below, the settlement is well within the "range of reasonableness" for preliminary approval.  Class Counsel believe that the settlement is the best that could be achieved given the substantial risks inherent in this litigation, including U.S. Nursing's defenses that could defeat Plaintiff's claims on summary judgment.  Accordingly, Plaintiff requests that the Court enter an order 1) preliminarily approving the proposed settlement; 2) conditionally certifying a class and subclass as further defined herein; 3) appointing Jonathan Gertler and Dan Gildor of Chavez & Gertler LLP and Lori E. Andrus of Andrus Anderson LLP as Class Counsel; 4) appointing Shameka Bolton as the Class Representative; 5) appointing Heffler Claims Group as the settlement administrator; 6) approving the form of notice to the class and the procedure for providing such notice; 7) setting a briefing schedule for Plaintiff's motions for attorneys' fees and costs and for final approval; and 8) scheduling a final fairness hearing.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

Defendant U.S. Nursing is a temporary services employer that deploys nurses to hospitals across the country to cross picket lines and temporarily replace striking personnel.  In doing so, U.S. Nursing has put up the replacement nurses in hotels and has required them to take a bus to and from the hospitals.  However, U.S. Nursing has not compensated the replacement nurses for the time they have spent on the bus, or the time they have spent waiting at the hospital before and after their shifts.  Additionally, U.S. Nursing, as part of its uniform payroll practices utilized

1  before this action was filed, would deduct 30 minutes of work time any day that a nurse did not

2  record a meal period on his or her timesheet, irrespective of whether patient needs or lack of relief

3  actually prevented the nurse from taking a meal period during which he or she was relieved of all

4  duty.  Finally, U.S. Nursing paid the nurses on a weekly basis, usually the week after the strike

5  ended, despite Labor Code section 201.3(b)(3), which mandates that temporary employees

6  working during labor disputes be paid on a daily basis.

7        On July 25, 2012, Plaintiff Shameka Bolton filed a class action complaint in Alameda

8  County Superior Court challenging these policies and uniform practices. The complaint was filed

9  on behalf of a class of nurses that U.S. Nursing placed to work at hospitals in California during

10 labor disputes and alleged that (1) U.S. Nursing failed to timely pay class members their wages;

11 (2) failed to pay class members all wages earned, including time spent on the bus and waiting at

12 the hospitals, as well as time spent working through meal periods; (3) failed to provide certain

13 class members meal periods; and (4) failed to provide class members accurate wage statements,

14 all in violation of various Labor Code provisions.  Plaintiff also alleged a cause of action for

15 unfair business practices under Business & Professions Code section 17200 and a cause of action

16 for declaratory relief.

17        Defendant removed the case to federal court on August 24, 2012.  Plaintiff's motion to

18 remand was denied on October 23, 2012 on the basis that the amount in controversy in the case

19 exceeded $5 million.  Plaintiff thereafter filed an amended complaint on November 30, 2012

20 adding a cause of action for failure to keep accurate records and claims for civil penalties pursuant

21 to the Labor Code Private Attorneys General Act of 2004 ("PAGA").

22        After sufficient discovery was conducted to enable the parties to evaluate the claims

23 alleged, the parties mediated the case on April 3, 2012 with the Hon. Edward A. Infante (Ret.) of

24 JAMS.  During the mediation, which focused entirely on class relief independent of attorneys'

25 fees and costs, the parties reached agreement on most of the terms of the settlement, including

26 class relief.  Over the course of the following weeks, the parties finalized the settlement that is

27 attached to the accompanying declaration of Jonathan E. Gertler ("Gertler Decl.") as Exhibit 1

28 and which Plaintiff now presents to the Court for preliminary approval.

### III.   THE TERMS OF THE PROPOSED SETTLEMENT

Pursuant to the settlement, U.S. Nursing will pay $1,700,000 to the class less settlement administration costs (estimated to be $40,000), $15,000 to the Labor and Workforce Development Agency ("LWDA") as the state's share of civil penalties obtained pursuant to PAGA, and any class representative payment the Court approves.  U.S. Nursing will also separately pay its share of payroll taxes, which Plaintiff estimates will be approximately $77,000, as well as any attorneys' fees and costs that the Court approves.  (Gertler Decl. ¶ 22.)  In the event the Court approves less than these amounts, the difference will be distributed to the class.  None of the $1,700,000 that U.S. Nursing has committed under the settlement (not including its share of employer-side payroll taxes) will revert to U.S. Nursing.  These and the other pertinent terms of the proposed settlement are summarized below.

### A.   CERTIFICATION OF THE SETTLEMENT CLASS AND SUBCLASS

The Settlement provides for conditional certification of a settlement class defined as "all present and former non-exempt U.S. Nursing employees who were placed to work in California health care facilities on a temporary basis during labor disputes at any time since July 25, 2008 through Preliminary Approval."  (Settlement Agreement ("S.A.") ¶ I.C.)  The class consists of at least 2,536 individuals  (Gertler Decl. ¶ 15.)

The Settlement also provides for conditional certification of a subclass defined as those members of the Class "whose time sheets, on one or more days, reflect a half-hour deduction from the total daily time worked when no meal period is otherwise identified for that day."  (S.A. ¶ I.BB.)  The subclass consists of at least 489 individuals.  (Gertler Decl. ¶ 15.e.)

### B.   THE BENEFIT CONFERRED ON THE CLASS

The Settlement obligates U.S. Nursing to deposit $1.7 million with the court-appointed settlement administrator within 10 days of Final Approval or 180 days after Preliminary Approval, whichever is sooner.  (S.A, ¶ VII.A.)  The deposit will be placed into a Qualified Settlement Fund maintained by the Settlement Administrator.  (*Id.*)

This fund, less the amount of administration costs, class representative payment, and LWDA payment approved by the Court, will be used to pay the individual settlement shares to

1   class members without a claim form.  Class members who do not opt out (and who are

2   successfully located) will receive their settlement share automatically.  Any residual resulting

3   from class members who do not cash their checks, or whom the settlement administrator is unable

4   to locate, will be redistributed among known participating class members in equal shares if the

5   residual is more than $15,000.[1]  (S.A. ¶ VII.F.)  If the residual is less than $15,000, the residual

6   will be distributed as *cy pres* to the Legal Aid Society - Employment Law Center subject to the

7   Court's approval.  (*Ibid*.)  None of the amount U.S. Nursing has committed will revert to U.S.

8   Nursing.  (*Ibid*.)

9          In addition to this monetary relief, U.S. Nursing has already implemented changes in its

10  policies and practices to come into compliance with the law.  (S.A. ¶ III.)  Specifically, U.S.

11  Nursing has begun to pay class members on a daily basis and has also ceased its practice of

12  deducting 30 minutes of work time whenever a class member does not indicate a meal period on

13  their timesheet.

14         **C.     VALUE OF THE SETTLEMENT TO CLASS MEMBERS**

15         As discussed more fully below, the total settlement fund is appropriate given the risks

16  associated with Plaintiff's claims.  In Class Counsel's judgment, the value of the settlement to the

17  class is substantial and well within the range of reasonableness.  (Gertler Decl. ¶ 20.)  Plaintiff

18  proposes to allocate the "net" settlement fund—the amount remaining after all court-approved

19  deductions are taken—in the same proportion as each class member's share of the overall

20  damages due the class.  (Gertler Decl. ¶ 23.)  Plaintiff estimates that, pursuant to this allocation,

21  the average settlement award will be $644.72.  (*Ibid*.)  However, there will be significant variation

22  among class members, with many (623) receiving more than $750 and a few (216) receiving more

23  than $1,500.  (*Ibid*.)  Overall, the distribution formulae and allocation to be applied by Plaintiff

24  provide a fair and reasonable way to compensate class members based on information U.S.

25

26  _____
    [1] The Settlement provides for reminder postcards to be sent to class members who have not
27  cashed their check within 30 days of the checks' void date.  The Settlement also authorizes the
    settlement administrator to employ a private investigator to locate class members who have not
28  cashed their checks and whose settlement share exceeds $1,000.  (S.A. ¶ VII.D.)  The cost for the
    private investigator shall be deducted from the individual settlement share.

1   Nursing has provided Plaintiff, including the strikes each class member worked, the number of

2   shifts each class member worked, and the hourly rates earned, and membership in the subclass.

3   (*See* Gertler Decl. ¶ 15.)  The formulae also account for the changes in U.S. Nursing's policies

4   and practices.  (*Ibid*.)

5         **D.     SETTLEMENT ADMINISTRATION**

6         The parties have agreed that, subject to the Court's approval, Heffler Claims Group should

7   administer the settlement.  (S.A. ¶ VI.A.)  The estimated cost of administering the Class Notice

8   and the Settlement is approximately $40,000.  (Gertler Decl. ¶ 25.)  This cost includes the

9   expense of providing notice by first class mail to the last known home address for each class

10   member identified in U.S. Nursing's employment records.  (S.A. ¶ VI.A.)  The Settlement

11   specifies that the settlement administrator will take all reasonable steps to locate a class member,

12   including running the addresses through the National Change of Address database prior to mailing

13   the notice, as well as skip-tracing notices returned as undeliverable based on the class member's

14   social security number and re-mailing the notices to any updated address found.  (*Ibid*.)

15         **E.     CLASS NOTICE**

16         The proposed notice, which is attached as Exhibit A to the Agreement, is based on

17   exemplars established by the Federal Judicial Center and notices previously approved by the

18   District Court.  (Gertler Decl. ¶ 26.)  The notice sets out information about the case and explains

19   the settlement in plain terms while still providing a full and comprehensive description of the

20   case, the settlement terms, and the class member's rights and options.  (*Ibid*.)  The notice also sets

21   out the individualized information from which the class member's settlement share will be

22   calculated along with an estimate of the anticipated award, as well as the procedures that must be

23   followed to dispute such information, or object to or to opt out of the Settlement.  Overall, the

24   proposed notice gives class members a fair opportunity to participate in, opt out of, or object to

25   the settlement such that it constitutes the best practicable notice to the class.  (*Ibid*.)

26         **F.     RIGHT TO CORRECT INFORMATION, OBJECT OR OPT OUT**

27         Class members will be given 45 days to submit corrections to the individualized

28   information on their notice or to otherwise object or opt out.  (S.A. ¶¶ VI.C, VI.D, VI.E.)  In the

1   event of a dispute or correction, an individualized review of the class member's records will be

2   conducted and the settlement administrator, after consultation with the parties, is authorized to

3   determine whether any changes should be made.  (*Id*. at ¶ VI.E.)

4   **G.    RELEASE OF CLAIMS**

5   In general terms, the Settlement provides for a release of all claims, known or unknown,

6   which were or could have been asserted by the class members against U.S. Nursing arising out of

7   or in any way related to the action or the facts and circumstances alleged in the action.  (*See* S.A.

8   ¶ X.)  This release is consistent with the standard releases in class actions.  The proposed class

9   notice contains an explicit reference to the release provisions, and class members will be fully

10  informed as to the claims they will releasing if they do not opt out of the Settlement.

11  **H.    ATTORNEYS' FEES AND COSTS**

12  The Settlement provides that Plaintiff is entitled to an award of attorneys' fees and costs to

13  be paid by U.S. Nursing separate from, and in addition to, class relief, in an amount that is subject

14  to the Court's approval.  (S.A. ¶ IV.A.5.)  Class Counsel will file their motion for attorneys' fees

15  and costs prior to the deadline for the submission of requests for exclusion and objections.[2]  The

16  motion will be noticed so that it will be heard concurrently with Plaintiff's motion for final

17  approval to be filed after the notice period has closed.  (Gertler Decl. ¶ 28.)  Class Counsel will

18  submit their time and expenses records as part of the fee motion, and make a full and appropriate

19  showing in support thereof.

20  Although the efforts undertaken by Class Counsel will be fully explored in their motion

21  for attorneys' fees and costs, for the time being it suffices to say that Class Counsel's efforts in

22  litigating this matter have been significant.  Class Counsel conducted extensive pre-filing

23  investigation and legal research, prepared and propounded thorough discovery, met and conferred

24  regarding discovery responses, reviewed and analyzed more than 8,000 pages of documents

25  produced by U.S. Nursing, including time and payroll records for class members and other

26  / / /

27

28  ------------------------------

    [2] *See In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 998 (9th Cir. 2010).

1    documents evincing the policies and procedures in effect during the class period.  (Gertler Decl.

2    ¶¶ 11, 13-15.)

3    **I.      TAX CONSEQUENCES**

4            Section IV.C of the Settlement specifies that one-third of each participating class

5    member's settlement share will be treated as wages subject to withholding and reported on IRS

6    Form W-2.  The remaining two-thirds will be treated as interest and penalties not subject to wage

7    withholdings and reported on IRS Form 1099.  This breakdown tracks generally the breakdown

8    between wages and interest/penalties overall as calculated by Plaintiff.  (Gertler Decl. ¶ 15.)

9    **J.      CLASS REPRESENTATIVE SERVICE AWARD**

10           To recognize the time and effort that Plaintiff expended for the benefit of the class, as well

11   as the risks she accepted by leading the litigation, the Settlement provides for the payment of a

12   service award in the amount of $10,000, subject to Court approval.  (S.A. ¶ IV.A.4.)  Class

13   Counsel will request the Court's approval of the service award as part of their motion for final

14   approval.  In the event that the Court awards less than the requested service award, the difference

15   will be made available for distribution to class members.  (S.A. ¶ IV.A.4.)

16   **K.      NO EFFECT ON OTHER PENDING CASES**

17           The parties are not aware of any impact the settlement would have on any pending cases.

18   **IV.   ARGUMENT**

19   **A.      THE STANDARD FOR REVIEW OF A CLASS ACTION SETTLEMENT**

20           The law favors settlement, particularly in class actions where substantial resources can be

21   conserved by avoiding the time, cost, and rigors of formal litigation.  *See* H. Newberg & A.

22   Conte, 4 *Newberg on Class Actions* (4th ed. 2002), § 11.41 (hereafter "Newberg"); *Class

23   Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Officers for Justice v.

24   Civil Service Comm. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).  As the Ninth Circuit

25   noted in *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976), "it hardly seems

26   necessary to point out that there is an overriding public interest in settling and quieting litigation."

27   *Van Bronkhorst*, at 950.  "This is particularly true in class action suits."  *Ibid.*  Nevertheless, to

28   make certain that the rights of absent parties are not unjustly compromised, the settlement of a

1   class action requires court approval.  Fed. R. Civ. P. 23(e).  This process safeguards the

2   procedural due process rights of class members and enables the court to fulfill its role as the

3   guardian of the class' interests.  *See* Newberg, §11:41 (and cases cited therein); Federal Judicial

4   Center, *Manual for Complex Litigation* (4th ed. 2004) (hereafter "Manual") § 21.63.  The

5   approval of a proposed class action settlement "involves a two-step process in which the Court

6   first determines whether a proposed class action settlement deserves preliminary approval and

7   then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural*

8   *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual

9   § 21.632.

10          At the preliminary approval stage, the court need only "'determine whether the proposed

11  settlement is within the range of possible approval.'"  *Murillo v. Pacific Gas & Elec. Co.*, 266

12  F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.

13  1982)); *see* Newberg, § 11.41.  In this context, "[t]here is an initial presumption of fairness when

14  a proposed class settlement was negotiated at arm's length by counsel for the class."  *Murillo v.*

15  *Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996); *see also Hanlon v. Chrysler*

16  *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)  (courts must give "proper deference to the private

17  consensual decision of the parties").

18          Because settlement is the preferred means of dispute resolution in complex class litigation,

19  "the court's intrusion upon what is otherwise a private consensual agreement negotiated between

20  the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that

21  the agreement is not the product of fraud or overreaching by, or collusion between, the

22  negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to

23  all concerned."  *Hanlon*, 150 F.3d at 1027.  Accordingly, "[i]n reviewing [a] proposed settlement,

24  the Court need not address whether the settlement is ideal or the best outcome, but only whether

25  the settlement is fair, adequate, free from collusion and consistent with Plaintiff's fiduciary

26  obligations to the class."  *Hopson v. Hanesbrands, Inc.*, No. CV-08-0844, 2088 WL 3385452, at

27  *2 (N.D. Cal. Aug. 8, 2008).  "[I]f the proposed settlement appears to be the product of serious,

28  informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

-9-

1  preferential treatment to class representatives or segments of the class, and falls within the range

2  of possible approval, then the court should direct that the notice be given to the class members of

3  a formal fairness hearing."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D.

4  Cal. 2007).

5      **B.     THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
             CLASS SETTLEMENT**

6

7          The proposed settlement warrants preliminary approval under the liberal standards

   summarized above.  The settlement is not only a fair, reasonable and adequate resolution of the

8  claims asserted, it represents a favorable result for class members.

9      **1.     Conditional Certification of the Proposed Class and Subclass Is
             Appropriate**

10

11         The purpose of conditional class certification in the settlement context is to facilitate the

12  provision of notice of the terms of the proposed settlement and the date and time of the final

13  approval hearing to all settlement class members.  *See* Manual § 30.41.  Neither formal notice nor

14  a hearing is required for the Court to grant conditional class certification.  Instead, the Court may

15  grant such relief upon an informal application by the settling parties and may conduct any

16  necessary hearing in court or in chambers, at the Court's discretion.  *Ibid.*; *see also* 4 Newberg,

17  § 11.22.  In the present context, conditional certification is entirely appropriate given that both the

18  class and subclass satisfy the requirements for class certification set out in the Federal Rules of

19  Civil Procedure.  *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019.

20      **a)     The Class Is Numerous and Ascertainable**

21         U.S. Nursing has identified over 2,500 geographically-dispersed present and former

22  employees from its payroll and personnel records that were subject to the uniform policies and

23  procedures at issue in this case during the relevant time period.  The class thus easily satisfies

24  Rule 23's requirement that joinder of all members be "impracticable."  *See*, *e.g.*, *Consolidated

25  Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed where

26  plaintiff class consists of 40 or more members); *accord* Newberg, § 3.05 (class of more than 40

27  "should raise a presumption that joinder is impracticable").  This is particularly true in the present

28  case that pits geographically-dispersed employees against their current employer.  *Mullen v.*

1   *Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (numerosity requirement satisfied

2   for 100-150 geographically-dispersed employees in a case against their current employer);

3   *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006) (numerosity

4   requirement more readily met for employees suing current employer because they may be

5   unwilling to sue individually "out of fear of retaliation").

### b)   Plaintiff's Claims Are Typical

7          Typicality is generally satisfied if the named plaintiff is a part of the class and has suffered

8   the same injury as other class members.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156

9   (1982); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).  In the present case,

10  this requirement is readily satisfied.  Plaintiff is part of the class and subclass she seeks to

11  represent and has suffered lost wages and has received late payment of wages as a result of U.S.

12  Nursing's class-wide policies and practices.  Though the extent of each class member's injury

13  might differ, U.S. Nursing will not be able to dispute that each class member was injured by the

14  same course of conduct that was not unique to Plaintiff.  Moreover, U.S. Nursing's defenses apply

15  class-wide and are also not unique to Plaintiff.

### c)   Plaintiff Will Adequately Protect the Interests of the Class

17         Adequate representation depends on "an absence of antagonism between representatives

18  and absentees, and a sharing of interest between representatives and absentees."  *Ellis*, 657 F.3d at

19  985.  In the present case, there is no conflict between Plaintiff and members of the class and

20  subclass given that she is a member of both and has directly suffered the same injuries as the rest

21  of the class members.  Moreover, she has prosecuted this case vigorously on behalf of the class as

22  evidenced by her retention of attorneys who are qualified and competent to prosecute a wage and

23  hour class action through trial, if necessary.  Accordingly, Plaintiff is adequate.  *See In re Rubber*

24  *Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005).

### d)   Common Issues Predominate

26         Each of Plaintiff's claims in the present case is based on an admitted policy that applied

27  uniformly across all class or subclass members within the class period.  For instance, with regard

28  to the claim regarding daily pay, U.S. Nursing admits that it did not pay class members on a daily

1    basis until late 2012.  (Gertler Decl. ¶ 14.)  With regard to Plaintiff's claims that U.S. Nursing has

2    not paid class members all wages, U.S. Nursing admits that it housed all class members at hotels

3    during their work assignments, and that it bused class members to and from their assigned

4    hospitals.  (*Ibid.*)  U.S. Nursing also admits that it has not paid class members for any of this time

5    or for the time class members spent waiting at the hospital prior to the start of and after the end of

6    their shift.  (*Ibid.*)  Lastly, U.S. Nursing has admitted that it automatically deducted 30 minutes of

7    work time whenever a class member did not indicate a meal period on his or her timesheet,

8    irrespective of whether a meal period was taken.  (*Ibid.*)

9            Given that the crux of this case is the legality of U.S. Nursing's uniform policies and

10   practices, common issues predominate over the need for individualized inquiries regarding

11   liability.  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)

12   ("uniform corporate policies will often bear heavily on questions of predominance and

13   superiority"); *Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356, 364 (N.D. Cal. 2010) ("uniform

14   corporate practices and policies that cumulatively impact the class in a particular manner can

15   satisfy the predominance requirement"); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D.

16   Cal. 2008) *aff'd sub nom. Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) ("Class

17   certification is usually appropriate where liability turns on an employer's uniform policy that is

18   uniformly implemented, since in that situation predominance is easily established.").

19           In this context, little more is needed regarding U.S. Nursing's actual implementation in

20   order to satisfy the predominance requirement.  *Kurihara v. Best Buy Co., Inc.*, No. C 06-01884

21   MHP, 2007 WL 2501698, at *10 (N.D. Cal. Aug. 30, 2007) ("Although plaintiff has submitted

22   little or no evidence as to the implementation of that [uniform] policy, the detailed nature of the

23   policy itself, and the reasonable inferences which can be drawn from them, constitute sufficient

24   evidence to satisfy plaintiff's burden as to the predominance of common questions.").

25   Nevertheless, common evidence exists, namely in the form of timesheet and payroll data, that

26   demonstrate that U.S. Nursing's policies were implemented and did injure members of the class

27   and subclass.  The fact is that each of the common contentions in this case—that U.S. Nursing

28   should have paid Class Members on a daily basis but did not; that U.S. Nursing should have paid

1    Class Members for time on the bus but did not; and that U.S. Nursing should have paid subclass

2    Members for their missed meal periods but did not—is of such a nature that it can be resolved "in

3    one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Accordingly,

4    common issues predominate over any individualized inquiry regarding liability.

5                 **e)**       **A Class Action Is Superior to Individual Litigation**

6         The superiority requirement involves a "comparative evaluation of alternative mechanisms

7    of dispute resolution." *Hanlon*, 150 F.3d at 1023.  In the present case, class resolution is superior

8    to other available methods for the fair and efficient adjudication of the present controversy

9    because, here, as in *Hanlon*, the alternative methods of resolution are individual claims for a

10    relatively small amount of damages.  These claims "would prove uneconomic for a potential

11    plaintiff" because "litigation costs would dwarf potential recovery." *Ibid*.  Moreover, class

12    members may avoid individual litigation out of fear of retaliation. *Mullen*, 186 F.3d at 625 (it is

13    "reasonably presumed" that potential class members still employed by employer "might be

14    unwilling to sue individually or join a suit for fear of retaliation at their jobs"); *accord Mitchell v.*

15    *Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) (""[I]t needs no argument to show that

16    fear of economic retaliation might often operate to induce aggrieved employees quietly to accept

17    substandard conditions.").  Accordingly, a class action is the superior and preferred method of

18    resolution. *Spencer v. No Parking Today, Inc.*, No. 12 CIV. 6323 ALC AJP, 2013 WL 1040052,

19    at *27 (S.D.N.Y. Mar. 15, 2013) ("the fact that some potential class members remain

20    employed . . . and may fear retaliation suggests that class resolution is superior"); *accord*

21    *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011).

22              **2.**       **The Settlement Is the Product of Arm's-Length, Informed Negotiations**

23         The Settlement is not the result of fraud or collusion.  Rather, the proposed Settlement was

24    reached following arm's-length negotiations presided over by a well-known mediator, the Hon.

25    Edward A. Infante (Ret.).  Moreover, both parties were represented by experienced counsel.

26    Plaintiff's counsel—Jonathan Gertler and Dan Gildor of Chavez & Gertler LLP and Lori Andrus

27    of Andrus Anderson LLP—collectively have many years of experience and are experts in the

28

1    litigation of wage and hour class actions.  (Gertler Decl. ¶¶ 2-6; Andrus Decl. ¶¶ 2-4 & Exhibit

2    A.)  The same is true of defense counsel.

3           Counsel were also well informed.  Prior to the mediation, U.S. Nursing produced more

4    than 8,000 documents in response to Plaintiff's requests for production that Plaintiff carefully

5    reviewed.  This production included time and payroll records for class members and other

6    documents evincing the policies and procedures in effect during the class period as well as U.S.

7    Nursing's defenses.  Plaintiff's review, along with U.S. Nursing's substantive responses to special

8    interrogatories and requests for admission, provided Plaintiff with a solid background to assess

9    the strengths and weaknesses of the claims and the benefits of the proposed Settlement under the

10   circumstances of this case.  (Gertler Decl. ¶¶ 11, 13.)

11          Overall, all counsel were sufficiently informed to evaluate the costs and benefits of

12   proceeding with, as opposed to settling, this case.  The decision to settle the case, and the

13   judgment that the Settlement is in the best interests of the class, therefore, warrant deference.

14   *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the

15   judgment of experienced counsel who has competently evaluated the strength of his proofs.");

16   *accord IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment

17   of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to

18   significant weight, and supports the fairness of the class settlement.'"); *Austin v. Pennsylvania*

19   *Dept. of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995).

20                **3.    The Proposed Notice and Notice Plan Are More than Sufficient**

21          Pursuant to Rule 23(e), the court must "direct notice in a reasonable manner to all class

22   members who would be bound by a proposed settlement."  Fed. R. Civ. P. 23(e)(1)(B).  The

23   notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice

24   practicable under the circumstances" and must "concisely and clearly state in plain, easily

25   understood language" the nature of the action, the class definition, a general statement of the class

26   claims and issues, that a class member may enter an appearance through counsel if desired, the

27   right and manner of exclusion or objection, and the binding effect of class judgment.  Fed. R. Civ.

28   P. 23(c)(2)(B).

1  The notice attached as Exhibit A to the Settlement satisfies this standard.  The proposed

2  notice is written in simple, direct, and comprehensive terms, and provides: (1) a description of the

3  claims in the case; (2) a detailed description of the terms of the Settlement; (3) disclosure of the

4  amount that will be requested for a service award to the named Plaintiff; (4) a detailed description

5  of how settlement shares will be calculated; (5) instructions on how to object to or opt out of the

6  Settlement; (6) a summary of the release provisions in the Settlement, including a direct quote

7  from the Settlement regarding the "Released Claims"; and (7) instructions as to how to obtain

8  additional information regarding the Settlement.  This is more than adequate.  *Churchill Village,*

9  *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory "if it generally

10  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

11  investigate and to come forward and be heard."  (citations omitted)).

12  Moreover, the Settlement requires that the notice be sent to class members via first class

13  mail, with returned notices forwarded to any forwarding address provided by the U.S. Postal

14  Service or to any more up-to-date address found via "skip tracing" based on the class member's

15  social security number.  Class members will have 45 days to opt out, submit objections, or

16  challenge their individual settlement share.  Again, this is more than adequate.  *Eisen v. Carlisle*

17  *& Jacquelin*, 417 U.S. 156, 175 (1974) (notice mailed to each member of a settlement class "who

18  can be identified through reasonable effort" constitutes reasonable notice).

19  In sum, the notice plan provides the best notice practical under the circumstances and will

20  provide class members a full and fair opportunity to consider the proposed Settlement and to

21  make a fully informed decision on whether to participate, to object, or to opt out.

22  **4.**   **The Settlement Is Fair and Reasonable Considering the Benefits Conferred, the Case Value, and Significant Litigation Risks**

23  The proposed Settlement involves a substantial sum of money, that, when distributed, will

24  confer meaningful monetary benefits on the class members.  As described above, each individual

25  award will be based on an allocation that is consistent with the nature of the claims asserted that

26  will fairly and equitably allocate the available funds in relation to the degree of damage each class

27  member incurred.  (Gertler Decl. ¶ 23.)  While class members who worked for U.S. Nursing for

28

-15-

only a short period of time (some even a single strike) will receive relatively small sums, those Class Members who worked for U.S. Nursing throughout the Class Period (up to 16 strikes), will receive appropriately larger settlement shares.  (*Ibid*.)

In preparing for mediation, Plaintiff estimated that U.S. Nursing's maximum exposure including penalties and interest but exclusive of attorneys' fees and costs was $6,200,000. (Gertler Decl. ¶ 15.)  This estimate was based on payroll records produced by U.S. Nursing and other information regarding the length of the strikes that each class member worked and the distance between the hotels and the hospitals involved in each strike, as well as an analysis of all the class members' timesheets.  Based on this information, Plaintiff developed a model of the damages owed each class member.  (*Ibid*.)

At the mediation, however, Class Counsel had to substantially discount the value of the claims due to the considerable risks of proceeding with litigation.  (Gertler Decl. ¶¶ 16-19.)  For instance, Plaintiff's busing claim was subject to the defense available under the Portal-to-Portal Act, 29 U.S.C. § 254(a), that ordinary commute time is not compensable.  Accordingly, if the Court found that busing class members to and from the hospitals was not an integral and indispensable activity, Plaintiff's claim would have been dismissed.   Plaintiff's daily pay claim was likewise susceptible to a complete defense, namely that Labor Code section 201.3(b)(3)—the basis for the claim—was preempted by the National Labor Relations Act.  And Plaintiff's meal period claims faced the difficulty that U.S. Nursing's policy to automatically deduct time is not per se illegal.  Accordingly, trial of that claim might have depended on individualized inquiry into the reasons why a subclass member worked through a meal period.  Further contributing to the risk of proceeding with litigation is the Court's ability to reduce penalties pursuant to PAGA in its discretion as well as the fact that continuing to litigate the case would likely have resulted in increased costs and fees and substantial delay from the appeals that would likely have arisen after trial, without substantially conferring more benefit to the class.

Plaintiff's counsel discounted the class claims in a manner consistent with these risks and weighed the likelihood that the class would obtain a substantially greater benefit if the litigation continued.  Plaintiff's counsel then determined that settling the case without prolonged and costly

1   litigation was in the class' best interest. In Plaintiff's counsel's opinion, further litigation would

2   be unlikely to result in any substantially greater recovery. (Gertler Decl. ¶ 20; Andrus Decl. ¶ 9.)

3          Though the Settlement amounts to roughly only 28% of the maximum value of the

4   judgment that Plaintiff might have obtained if she had taken the case to trial and won on every

5   issue, that is not a proper indicator of whether the Settlement is fair and reasonable. *White v.

6   Experian Information Solutions, Inc.*, 803 F. Supp. 2d 1086, 1098 (C.D. Cal. 2011) (rejecting

7   contention that settlement is not fair and reasonable even though it was asserted that settlement

8   amounted to a 99% discount over full value of claims); *Behrens v. Wometco Enterprises, Inc.*, 118

9   F.R.D. 534, 542, *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990)

10  ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single

11  percent of the potential recovery."). In this context, it is significant that the settlement does not

12  revert to U.S. Nursing and that it provides substantial and immediate benefits to a particularly

13  vulnerable class of workers without a claims process. *See White*, 803 F. Supp. at 1098; *see also*

14  *Kakani v. Oracle Corp.*, No. C06-06493 WHA, 2007 WL 1793774, at *7 (N.D. Cal. June 19,

15  2007); *see also* Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for*

16  *Judges* (2005), p. 13, *available at* http://www.fjc.gov/public/pdf.nsf/lookup/classgde.pdf/$file/

17  classgde.pdf (non-reversionary provision is an indicator that agreement has been honestly and

18  fairly negotiated).

19          **5.       The Proposed Class Representative Award Is Reasonable**

20          Courts award class representative payments to advance public policy by encouraging

21  individuals to come forward and perform their civic duty in protecting the rights of the class and

22  also to compensate class representatives for their time, effort, and inconvenience. *See, e.g.*,

23  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *In re: Mego Fin. Corp. Sec. Litig.*, 213

24  F.3d 454, 463 (9th Cir. 2000); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D.

25  Cal. 1994). It has long been established that courts have discretion to approve such service or

26  "incentive" awards to representative plaintiffs in class actions as compensation for their having

27  expended time and effort for the benefit of others and for having undertaken the risks inherent in

28  serving as a named plaintiff. In evaluating the reasonableness of a requested award, the Court

1    should consider factors such as "the actions plaintiff has taken to protect the interests of the class,

2    the degree to which the class has benefited from those actions, … [and] the amount of time and

3    effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977.

4          In the present case, Ms. Bolton contributed substantially to the prosecution of this case

5    through numerous discussions with counsel.  She made the decision to act as an advocate on

6    behalf of hundreds of other nurses, and spearheaded a $1.7 million settlement, all while subject to

7    potential retaliation by U.S. Nursing or other nurses.  In connection with the motion for final

8    approval, Plaintiff will provide a declaration regarding the time that she has spent on the case and

9    the risks that she undertook.  In the meantime, Plaintiff submits that the amount sought is well

10   within the range of reasonableness for approval.  *See Mann & Co. v. C-Tech Indus., Inc.*, No. 08-

11   11312-RGS , 2010 WL 457572, at *2 (D. Mass. Feb. 5, 2010)  (approving $15,000 incentive

12   award to named plaintiff); *Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA, 2009 WL

13   587844, at *5 (S.D. Cal., March 6, 2009) (approving incentive awards of $12,000 to each of

14   several class representatives).

15         **6.      There Are No Indicia of Collusion or Unfairness**

16         Though courts must be "even more scrupulous than usual in approving settlements where

17   no class has yet been formally certified,"[3] the fact is that there are no indicia of collusion or

18   unfairness surrounding the Settlement.  In this connection, the mediation conducted on April 3,

19   2013, focused entirely on class relief.  (Gertler Decl. ¶ 21.)  There were no negotiations

20   concerning the amount of attorneys' fees.  (*Ibid*.)  Any fees approved by the Court are to be

21   awarded separately from the settlement fund, and any subsequent negotiations will occur entirely

22   separate from the proposed Settlement.  Given the lengths to which the parties went to avoid

23   potential conflicts of interest with the class, there are no indicia of collusion or unfairness.  *In re*

24   *Mexico Money Transfer Litigation (Western Union and Valuta)*, 164 F. Supp. 2d 1002, 1033

25   (N.D. Ill. 2000), *aff'd sub nom. In re Mexico Money Transfer Litigation* (7th Cir. 2001) 267 F.3d

26   743 (no conflict where fee is separately negotiated and separately funded given that "it does not

27

28
---
[3] *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

1  reflect any diminished recovery to class members"); *Kaufman v. American Exp. Travel Related*

2  *Services Co., Inc.*, 264 F.R.D. 438, 448-49 (N.D. Ill. 2009).

3  **V.    PROPOSED SCHEDULE FOR REMAINING PROCEDURES**

4         The chart below summarizes Plaintiff's proposed schedule for the notice and settlement

5  approval process.  Plaintiff requests that the Court select a date on the Court's calendar for the

6  Final Approval Hearing on or around October 17, 2013 and include that date in adopting the

7  proposed order that was submitted with this motion.  The proposed order also allows for

8  shortened time (10 court days) rather than the usual 35 day notice period for the motion for final

9  approval.  Should the Court adopt a longer notice period for the motion, the hearing date should

10 be moved out accordingly.

| Preliminary Approval | June 6, 2013 |
|---|---|
| Deadline to mail class notice<br>(40 days after Preliminary Approval) | July 16, 2013 |
| Deadline for Plaintiff to file motion for attorneys' fees and costs<br>(5 court days after Preliminary Approval) | June 13, 2013 |
| Deadline for submission of objections, opt-out requests, or award contests<br>(45 days after notice is mailed) | August 30, 2013 |
| Deadline for final report from Settlement Administrator re: notice<br>(10 court days after deadline for submission of objections, etc.) | September 13, 2013 |
| Deadline to file motion for final approval<br>(10 court days prior to hearing) | October 3, 2013 |
| Final Approval Hearing | **TO BE SET BY THE COURT**<br>(The parties respectfully request a hearing date of October 17, 2013) |

**VI.    CONCLUSION**

       For all the foregoing reasons, the Court should grant preliminary approval of the

Settlement, conditionally certify the proposed settlement class and subclass pursuant to Rule

1    23(b)(3) of the Federal Rules of Civil Procedure, appoint the Settlement Administrator, approve

2    and order distribution of the proposed class notice, and schedule a final approval hearing.

3

4                                              Respectfully submitted,

5    Dated:  May 2, 2013                       CHAVEZ & GERTLER LLP

6
                                               By:    /s/Jonathan E. Gertler
7                                                     Jonathan E. Gertler

8                                              *Attorneys for Plaintiff SHAMEKA BOLTON and the
                                               Proposed Settlement Class and Subclass*

NOTICE OF <u>UNOPPOSED</u> MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
*Case No.:* C-12-04466 LB