UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| SHAMEKA BOLTON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>    v.<br><br>U.S. NURSING CORP., and DOES 1 through 50, inclusive,<br><br>                Defendants.<br>_____/ | No. C 12-04466 LB<br><br>**ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND APPOINTING CLASS COUNSEL; (2) PRELIMINARILY APPROVING SETTLEMENT; (3) APPROVING NOTICE TO CLASS; AND (4) SETTING HEARING FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR FEES AND COSTS AND SERVICE AWARD**<br><br>[ECF No. 36] |

**INTRODUCTION**

Shameka Bolton brought this putative class action charging that Defendant U.S. Nursing Corp. ("U.S. Nursing") violated California wage-and-hour laws applicable to her and more than 2,500 other U.S. Nursing employees placed by U.S. Nursing in health care facilities to temporarily replace staff involved in labor disputes. Compl., ECF No. 1 at 10.[1] U.S. Nursing is a temporary service employer based in Colorado that provides replacement staff to healthcare providers during strikes and other labor disputes. First Am. Compl. ("FAC"), ECF No. 20, ¶ 1. U.S. Nursing placed Ms. Bolton in at least four health care facilities starting in January 2011. *Id.* ¶ 4. The complaint charges

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

eight claims: (1) failure to pay for time spent in work-mandated transit; (2) failure to pay for work during meal periods; (3) failure to provide legally-mandated meal periods; (4) failure to keep accurate records; (5) failure to pay wages on a daily basis; (6) failure to provide accurate wage statements; (7) violations of California's unfair competition law; and (8) declaratory relief based on claims one through seven. *Id.* ¶¶ 24-74 (citing the California Labor Code and Cal. Bus. & Prof. Code § 17200 *et seq.*).

Following some discovery (including document production by U.S. Nursing of over 8,000 documents) and private mediation with Judge Infante at JAMS, the parties reached a settlement agreement, and on May 2, 2013, Plaintiff filed an unopposed motion for the following: (1) preliminary approval of the settlement agreement reached by the parties; (2) provisional certification of the proposed settlement class; (3) appointment of class counsel, the class representative, and a settlement administrator; (4) a proposed plan for notice to the class of the litigation and the proposed settlement agreement; and (5) a proposed briefing and hearing schedule for final approval of the settlement and entry of a final order and judgment. ECF No. 36.

In summary form, the settlement agreement is as follows. *See* Exh. 1, Gertler Decl. U.S. Nursing will contribute $1,777,000 to a non-reversionary settlement fund for cash payments and payroll taxes allocated as follows: (1) $1,635,000 to the class and subclass (with U.S. Nursing to pay separately each employee's share of payroll taxes, which totals approximately $77,118); (2) $15,000 to the State of California Labor and Workforce Development Agency ("LWDA") as the state's share of civil penalties obtained pursuant to the California Private Attorney General Act of 2004 ("PAGA"); (3) $40,000 to the Settlement Administrator;[2] and (4) $10,000 to Shameka Bolton as an incentive payment. Settlement Agreement at 19-20; Mot. at 10; Gertler Decl. ¶ 22. Plaintiff will move for attorney's fees and costs, and U.S. Nursing will pay those attorney's fees and costs (as approved by the court) in addition to the settlement fund. Settlement Agreement at 20. The settlement agreement will be administered by an independent claims administrator called Heffler

---

[2] After the mediation, Plaintiff solicited bids from two settlement administrators. Gerlter Decl., ¶ 25. The amount is somewhat high, but class members live in all 50 states, and that requires accounts in those states for tax purposes. *Id.*

C 12-04466 LB
ORDER 2

Claims Group, which will mail the notices (as described below), calculate the settlement shares, issue the checks, redistribute the remaining funds to class members, issue the tax reports, and otherwise administer the settlement fund. *Id.* ¶ VI.A. Should the court award a different amount (either more or less) to the LWDA, the Settlement Administrator, or the Plaintiff, the difference will be either credited to or debited from the payment to the class and subclass. *Id.* at 19-20.

As to allocation of the settlement funds, the Settlement Agreement provides the following:

<u>Distribution of Settlement Funds</u>. The sum set forth in section IV.A.1 [$1,635,000] shall be distributed to the Participating Class Members without a claims process applying an allocation formula of Plaintiff's discretion, subject to review by U.S. Nursing and approval by the Court. The share for each Participating Class Member will be determined pro-rata based on the Participating Class Member's share of the total damages estimated by Plaintiff, which shall be based on the number of shifts worked by each Participating Class Member, the pay rate earned for each shift, and membership in the Subclass.

*Id.* at 20. This means that class members who are located and who do not opt out will receive their settlement share automatically. Plaintiff proposes allocating the net settlement fund in the same proportion as each class member's share of the overall damages due to the class (based on the strikes each class member worked, the number of shifts worked, the hourly rates earned, and membership in the subclass), also accounting for changes in U.S. Nursing's policies and practices. Gertler Decl. ¶ 15. Any residual resulting from class members who do not cash their checks[3] or who cannot be located will be redistributed among participating class members in equal shares if the residual is more than $15,000. Settlement Agreement, ¶ VII.F. If the residual is less than $15,000, it will revert as a *cy pres* award to the Legal Aid Society–Employment Law Center (subject to court approval). *Id.*

U.S. Nursing also agreed to implement changes in its payment practices, including paying class members on a daily basis and stopping its practice of deducting 30 minutes of work time for assumed meal breaks. *Id.* ¶ III.

This order grants provisional class certification, appoints the class representative and class

---

[3] The Administrator will send reminder notices to class members who have not cashed their checks within 30 days of the checks' void date. Settlement Agreement ¶ VII.D. The settlement agreement authorizes the Administrator to hire an investigator to locate class members who have not chased their checks and whose settlement share exceeds $1,000, with costs to be deducted from the individual settlement share. *Id.*

C 12-04466 LB
ORDER 3

counsel, approves the settlement plan preliminarily, approves the plan for notice to the class, and sets the schedule for the final approval process (including Plaintiff's attorney's fees and incentive award).

## ANALYSIS

### I. JURISDICTION

The court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### II. CONDITIONAL CERTIFICATION OF CLASS

For settlement purposes only, the parties propose provisional certification of the following class:

> [A]ll present and former non-exempt U.S. Nursing employees who were placed to work in California health care facilities on a temporary basis during labor disputes at any time since July 25, 2008 through Preliminary Approval.

Settlement Agreement ¶ I.C (the "Class"). Also for settlement purposes only, the parties propose provisional certification of a subclass:

> [M]embers of the Class whose time sheets, on one or more days, reflect a half-hour deduction from the total daily time worked when no meal period is otherwise identified for that day.

*Id.* ¶ I.BB.

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 26(a) and (b). In a settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial. *See Staton v. Boeing*, 327 F.3d 938, 952-53 (9th Cir. 2003) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (same).

The court finds that the proposed settlement class here meets the requirements of Federal Rule of Civil Procedure 23(a) and (b).

#### A. Rule 23(a)

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the

interests of all class members. *See* Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

Here, the factors support class certification. First, the class members – all identifiable from employee records – are (per counsel) around 2,500, which makes joinder is impracticable. *See Jordan v. County of L.A.*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, *County of L.A. v. Jordan*, 459 U.S. 810 (1982). Second, each of the class members' claims is based on facts that were largely admitted in U.S. Nursing's discovery responses and that applied uniformly across all class or subclass members within the class period. *See* Gertler Decl. ¶ 14. The class members' legal issues also involve the same legal theories about compliance with the California Labor Code. Third, the claims are typical of the claims of other class members: all involve reimbursement of wages that allegedly should have been paid under the Labor Code and that were not paid by the employer. *See Hanlon*, 150 F.3d at 1019-20 (claims are typical if they are reasonably coextensive with that of absent class members; they need not be substantially identical). Ms. Bolton is a member of the class and subclass, suffered lost wages, and received late wage payments. Mot. at 17; Gertler Decl. ¶ 8. Fourth, the parties agree, and the court finds, that the named plaintiff is able to fairly and adequately protect the interests of all class members. The factors relevant to a determination of adequacy are as follows: (1) the absence of potential conflict between the named plaintiff and the class members; and (2) counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *Id*. at 1020. The court is satisfied that those factors exist here. As discussed already, the named plaintiff has shared claims and interests with the class. Also, she has qualified and competent counsel. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001); *Brown v. Ticor Title Ins. Co*., 982 F.2d 386, 390 (9th Cir. 1992).

**B. Rule 23(b)(3)**

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022. Plaintiffs seek provisional certification, and the court finds that certification is appropriate under Rule 23(b)(3). Questions of law and fact common to class members predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). The case involves

multiple claims for relatively small sums, and a class action is superior to an alternative method for fairly and efficiently adjudicating the claims. *See Amchem Products*, 521 U.S. at 625; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (class action appropriate because "if plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover").

### C. Conclusion: Provisional Certification is Appropriate

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), the court conditionally certifies the class members set forth above solely for the purpose of entering a settlement in this matter.

## III. APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

For the reasons set forth in the previous section, the court appoints Shameka Bolton as the class representative. The court finds specifically that she has claims that are typical of the claims of class members generally and is an adequate representative of the other members of the proposed class. The court also provisionally finds that Jonathan Gertler and Dan Gildor of Chavez & Gertler LLP and Lori E. Andrus of Andrus Anderson LLP have sufficient experience and expertise in prosecuting class action cases and appoints them as class counsel for settlement purposes only.

## IV. PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Procedurally, the approval of a class action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms. In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1027. The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary settlement is appropriate. In addition to the settlement terms discussed above, relevant facts include that Plaintiff's initial damages model estimated U.S. Nursing's maximum exposure at $6,200,000 in unpaid wages, penalties, and interest, not including attorney's fees and costs. Gertler Decl. ¶ 15. Approximately one-third of this amount constituted wages. *Id.* That is substantially higher than the $1.635 million proposed settlement amount. But Plaintiff's counsel explains that they needed to substantially discount the value of their claims given the possibility that U.S. Nursing could succeed in one or more defenses. *Id.* ¶¶ 16-19. These included the Portal-to-Portal Act, 29 U.S.C. § 254(a), the possibility that California Labor Code section 201.3(b)(3) was susceptible to preemption by the National Labor Relations Act, and the fact that U.S. Nursing's policy to automatically deduct time for missed meal periods is not per se illegal. *Id.* In addition, the court notes that the settlement amount was based on a mediator's proposal issued by Retired Chief U.S. Magistrate Judge Edward A. Infante. *Id.*[4]

With that context, the court first finds that the strength and relative risks identified militate in favor of settlement. *See* Gertler Decl. ¶¶ 15-20. Also, litigation poses risks, and this litigation could become expensive and protracted. *Id.* Moreover, assuming that U.S. Nursing's policy to automatically deduct time is not per se illegal, an individualized inquiry (rather than class resolution) might have been required to try that claim. *See id.* ¶ 18.

The settlement funds will be allocated "pro-rata based on the Participating Class Member's share of the total damages" and considering the number of shifts worked, pay rate earned for each shift and membership in the subclass. Settlement Agreement ¶ IV.B. The allocation formula discussed above seems reasonable in light of the defenses and risks that experienced counsel have identified. Also, the settlement is the product of serious, non-collusive, arms' length negotiations and was reached during mediation at which the parties did not negotiate attorney's fees. Gertler Decl. ¶ 21. In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that preliminary approval of the settlement is warranted. *See*

---

[4] Plaintiff's counsel filed a robust, informative declaration about the case and the settlement process, including the genesis of the case, discovery, damages calculations, risk assessment, and the settlement decision. *See* ECF No. 36-1.

1 *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615,
2 625 (9th Cir. 1982). The court thus approves the settlement agreement preliminarily.

## V. APPROVAL OF CLASS NOTICE

The court approves the proposed notice, which will be mailed by first-class mail to the last known home address for each class member identified in U.S. Nursing's employment records. Settlement Agreement, ¶ VI.A. The Settlement Administrator will conduct a national change of address search on all class members whose names and contact information are included in the Class Data. *Id.* Then, within 40 days of preliminary approval, the Settlement Administrator will send class members the class notice via first class U.S. mail. *Id.* ¶ VI.B.3. The class notice will be tailored for each individual and have pre-printed information regarding the individual's name, contact information, the number of shifts worked and pay rates earned during the class period. *Id.* ¶ VI.B.1. In addition, the class notice will explain to class members how they can submit additional documentation of the number of shifts worked and pay rates earned if they believe the class notice is inaccurate. *Id.* ¶ E. The Settlement Administrator also will re-mail Class Notices returned with a forwarding address and search for a more current mailing address on any materials returned as undeliverable and re-mail them. *Id.* ¶ B.5; *see also* ¶ VI.A (administrator will run the addresses through the National Change of Address data base before mailing the class notice and will skip trace notices returned as undeliverable based on the class member's social security number and then re-mail to any new address identified).

The court also finds that the notice fairly, plainly, accurately, and reasonably informs class members of the following: (1) the nature of the litigation, the settlement class, the identity of class Counsel, and the essential terms of the settlement agreement, including tax treatment of the settlement amounts; (2) information about how administrative costs, LWDA sanctions, and possible payment to the class representative (if approved by the court) will be paid from the fund; (3) attorney's fees and costs will not be paid from the fund; (4) how to challenge or opt out of the settlement, if they wish to do so, and the effect of failing to do so; (5) this court's procedures for final approval of the settlement and settlement agreement and the class members' right to appear if they desire; and (6) how to obtain additional information regarding this litigation, the settlement

1 agreement and the approval process.

2 In sum, the form of the notice is approved, and the manner of distributing the class notice is
3 approved.

## VI. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

On May 21, 2013, U.S. Nursing filed a declaration of compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Ensign Decl., ECF No. 39. In that declaration, counsel established that he timely mailed notice of the settlement agreement to the Attorney General of the United States and the appropriate state official in each state where class members reside. The notice contains the documents required by 28 U.S.C. § 1715(b)(1-8). Any final settlement approval will be more than 90 days after service. *See* 28 U.S.C. § 1715.

## VII. PROCEDURES FOR FINAL APPROVAL OF SETTLEMENT

The schedule for dates and deadlines is set forth in the table below and discussed in the sections that follow.

| Event | Date |
|---|---|
| Preliminary Approval | June 6, 2013 |
| Deadline to mail class notice (40 days after originally-noticed hearing date for Preliminary Approval) | July 16, 2013 |
| Deadline for Plaintiff to file motion for attorney's fees and costs (5 court days after originally-noticed hearing date for Preliminary Approval) (any opposition or reply are due on the motions schedule set forth in Civil Local Rules 7) | June 13, 2013 |
| Deadline for submission of objections, opt-out requests, or award contests (45 days after notice is mailed) | August 30, 2013 |
| Deadline for final report from Settlement Administrator re: notice (10 court days after deadline for submission of objections, etc.) | September 16, 2013 |
| Deadline to file unopposed motion for prior approval | October 3, 2013 |
| Final Approval Hearing | October 17, 2013, **9:30 a.m.** |

The court adjusted the proposed dates slightly to account for Labor Day.

C 12-04466 LB
ORDER 9

**A. Fairness Hearing**

At the hearing, the court will determine whether to grant final certification of the settlement class and subclass and final approval of the settlement agreement (including the payment of administrative costs, the payment of incentive awards to the class representative, and the motion for attorney's fees and costs).

**B. Mailing of Notice by No Later Than 40 Days From Today**

The court orders the Parties (through the Settlement Administrator) to mail by first-class postage the notice to all known potential settlement class members by no later than 40 days from today's date and follow the procedures listed above. The parties shall file proof of distribution of notice at or before the final hearing.

**C. Requests for Exclusion from the Settlement**

1. Class members may exclude themselves, or opt out, of the class settlement, and that request for exclusion must be made in the manner set forth in class notice.

2. To be excluded from the settlement, the opt-out request must be sent to the addresses in the notice by First Class Mail and must be postmarked by August 30, 2013 (which is 45 days after the deadline for the Settlement Administrator to mail it).

3. All requests for exclusion must be provided to counsel by September 16, 2013. Class counsel and U.S. Nursing shall file copies of all timely requests for exclusion 21 days before the fairness hearing.

**D. Objections to the Settlement**

1. Any class member who has not opted out of the settlement and who wishes to object to the fairness, reasonableness or adequacy of the settlement must do so in writing and must include the information indicated on the class notice. Class members who have timely objected to the settlement in writing may also appear at the fairness hearing.

2. Objections shall be mailed to the Settlement Administrator at the address provided in the Class Notice and must be postmarked by August 30, 2013 (which is 45 days after the deadline for the Settlement Administrator to mail it).

3. Objections raised at the fairness hearing will be limited to those previously submitted in

1  writing. Any member of the class who does not timely serve such a written objection shall not be
2  permitted to raise such objection, except for good cause shown, and any member of the class who
3  fails to object in the manner prescribed herein shall be deemed to have waived, and shall be
4  foreclosed from raising, any such objection.

5      4. Class counsel and U.S. Nursing shall file copies of all timely objections with the court 21
6  days before the fairness hearing.

### E. Deadline for Submitting Motion Seeking Final Approval

The deadline in the chart contemplates an unopposed motion and also is based on the early filing of the motion for attorney's fees. If there are issues, the motion needs to be filed 35 days before the hearing date. The above schedule allows that.

### F. Deadline for Petition for Attorneys Fees, Costs, and Expenses

Class counsel shall file with this court their petition for an award of attorney's fees and reimbursement of costs no later than 5 days from today. The motion shall be heard at the time of the fairness hearing.

### G. Plaintiff's and Class Members' Release

If, at the fairness hearing, this court grants final approval to the settlement and the settlement agreement, the named Plaintiff and each individual settlement class member who does not timely opt out will release claims, as set forth in the settlement agreement, by operation of this court's entry of the judgment and final approval.

## CONCLUSION

For the reasons previously stated, the court GRANTS Ms. Bolton's unopposed motion for preliminary approval of class action settlement. This disposes of ECF No. 36.

**IT IS SO ORDERED.**

Dated: June 6, 2013      _____
    LAUREL BEELER
    United States Magistrate Judge