UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHAMEKA BOLTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. NURSING CORP., and DOES 1-50, inclusive,<br><br>Defendants.<br>_____/ | No. C 12-4466 LB<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARDING CLAIMS ADMINISTRATION FEES, ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS, AND AUTHORIZING ENTRY OF JUDGMENT OF DISMISSAL WITH PREJUDICE**<br><br>[ECF No. 42, 45] |

## INTRODUCTION

The parties agreed to settle all claims in this case. *See* ECF No. 42, ¶ 1.[1] The court previously granted the unopposed motion for preliminary approval. *See* Order, ECF No. 41. Plaintiffs then moved for attorneys fees and costs and for final approval. ECF Nos. 42, 45. The court held a hearing on October 17, 2013, and grants the unopposed motions for the following reasons. Because the requested amounts are fundamentally fair, adequate and reasonable, the court awards a total

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page number at the top of the page.

C 12-4466 LB
ORDER

settlement sum of $1,700,000, allocated as follows: (1) $1,647,082.39[2] to participating class members as class relief (and U.S. Nursing will pay separately the employer's share of payroll taxes arising from the settlement awards[3]); (2) $15,000 to the State of California Labor and Workforce Development Agency; (3) $27,917.61 to Heffler Claims Group, the claims administrator; and (4) $10,000 to Shameka Bolton as an incentive award. The court also grants class counsel's unopposed motion for $450,000 in attorney's fees. *See* ECF No. 42.

## STATEMENT

Plaintiff Shameka Bolton filed a class action complaint against Defendant U.S. Nursing Corp. on July 25, 2012 for wage and hour violations. *See* Notice of Removal, ECF No. 1. Ms. Bolton is the named plaintiff for a purported class of U.S. Nursing employees who were placed to work temporarily in California health care facilities during labor disputes. She sued U.S. Nursing Corp. for failing to (1) pay wages due for transit time; (2) pay wages for missed meal periods; (3) provide meal periods; (4) keep accurate records; (5) pay timely wages; and (6) provide accurate wages statements. She also brought claims for unfair business practices and declaratory relief. *See* First Amended Complaint, ECF No. 20.

The terms of the settlement in this case are as follows. *See* Settlement Agreement. The parties agree to certification of a "settlement class," defined as

> all present and former non-exempt U.S. Nursing employees who were placed to work in health care facilities on a temporary basis during labor disputes at any time since July 25, 2008 through Preliminary Approval.

*Id.* ¶ I.C. They also seek certification of a subclass of those class members "whose time sheets, on one or more days, reflect a half-hour deduction from the total daily time worked when no meal

---

[2] The settlement agreement set aside $1,635,000.00 for the class and $40,000.00 for the claims administrator. Because the claims administrator's fees came in at only $27,917.61, the remaining $12,082.39 will also be distributed to the class. *See* Baldwin Decl., ECF No. 44, ¶¶ 13-14; Gertler Decl. Ex. 1 ("Settlement Agreement"), ECF No. 45-1 at 16. The precise amount may vary nominally after final approval.

[3] The exact amount payable by U.S. Nursing will be computed by the Settlement Administrator based on the amounts paid to the Class Members. *See* Settlement Agreement, Gertler Decl. Ex. 1, ECF No. 45-1 at 24.

period is otherwise identified for that day." *Id.* ¶ I.BB.

In sum, the settlement agreement provides for a total payment of $1.7 million allocated to the following categories: (1) $1,635,000 to participating class members as class relief, provided that U.S. Nursing shall separately pay the employer's share of the applicable payroll taxes[4]; (2) $15,000 to the State of California Labor and Workforce Development Agency; (3) $40,000.00 in settlement administration costs, with any remainder being distributed to Participating Class Members; (4) a $10,000.00 incentive award to Ms. Bolton; and (5) reasonable attorneys' fees, as awarded by the court. *Id.* ¶¶ IV.A.1-5.

As described in the class notice, class members had the right to opt out of the settlement or object to its terms by timely notifying the claims administrator. *Id.* ¶¶ VI.C.-D.

The claims administrator will send settlement checks to each participating class member (class members who did not opt out) in amounts based on the class member's pro rata share of the total damages based on the number of shifts worked during the relevant period, the pay rate earned for each shift, and whether the participating class member is also part of the subclass. *Id* at ¶ IV.B. One-third of each Participating Class Member's Settlement Share shall be subject to wage withholdings. *Id.* at ¶ IV.C. The claims administrator will issue a Class Notice to all Class Members, calculate Settlement Shares, issue checks and tax reports and otherwise administer the settlement. *Id.* at ¶ VI.A.

The settlement agreement also provides for the distribution of any unclaimed settlement funds (for example, if some class members do not cash their settlement checks within 90 days). If, after the initial disbursement, there is more than $15,000 remaining in the settlement fund, the balance will be distributed equally among the participating class members. *Id.* ¶ VII.G. If less than $15,000 remains, the balance will be disbursed to the Legal Aid Society – Employment Law Center in San Francisco. *Id.*

Following the court's preliminary approval and conditional certification of the settlement, *see*

---

[4] Plaintiff estimates this will be approximately $77,000.00. *See* Gertler Decl., ECF No. 45-1, ¶ 12.

6/6/13 Order, ECF No. 41, U.S. Nursing gave Heffler the relevant class information including the 2,765 class members' names, last-known addresses, number of shifts worked, hourly pay rates, missed meal periods and estimated settlement share. Baldwin Decl., ECF No. 44, ¶ 6. Heffler updated the addresses by running them through the National Change of Address database and then mailed the court-approved notice packets to the class members on July 16, 2013. *Id.* ¶¶ 7-8. Heffler also conducted a skip trace on all returned mail with no forwarding address. *Id.* ¶ 9. It was able to find addresses for and re-mailed notice packets to all but 90 class members (96.75%). *Id.* ¶ 9. In support of the motion for final settlement approval, Heffler provided the following data, which was current as of September 26, 2013:

| Category | Number |
| --- | --- |
| Total Eligible Class Members | 2,765 |
| Objections | 0 |
| Requests for Exclusion | 1 |
| Returned Class Notices | 90 (3.25%) |
| Average Settlement Amount | $595.51 |
| Maximum Settlement Recovery | $3602.67 |
| Minimum Settlement Recovery | $78.53 |

Baldwin Decl., ECF No. 44 ¶¶ 9-14. If

## ANALYSIS

### I. JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1332(c) and (d)(2).

### II. NOTICE

The court finds that the notice to the settlement class, as described in the court's earlier order provisionally approving the class, provided the best practicable notice to the members of the class (reaching of class members) and satisfied the requirements of due process. As discussed above, the parties employed Heffler Claims Group, a claims administrator, to oversee the class notification process, distribute funds to class members and handle ancillary tax reporting services. The court finds that these procedures were adequate.

## III. CLASS CERTIFICATION

For the reasons and under the standards set forth in the court's June 6 order, the court finds that the proposed settlement class here still meets the requirements of Federal Rule of Civil Procedure 23(a) and (b). The court certifies the class and subclass set forth above solely for the purpose of entering a settlement in this matter.

## IV. FINAL APPROVAL OF SETTLEMENT AGREEMENT

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary settlement is appropriate. First, the strength and relative relation of this case to the state case militate in favor of settlement. Second, litigation poses risks, and U.S. Nursing denies liability. *See* Settlement Agreement ¶ XI.A. In any event, even with a strong case, litigation entails expense. U.S. Nursing also asserted defenses under the Portal to Portal Act and preemption under the National Labor Relations Act that contributed to the risk of litigation. *Id.* at 9-10. Finally, given the risk of protracted appeals, this factor favors settlement.

Third, the amount of the settlement is sufficient to cover the damages at issue in this litigation given the risks identified. Plaintiff estimates that U.S. Nursing's maximum potential exposure on all claims is $6,174,973.65. Gertler Decl., ECF no. 45-1 at 6. Only one-third of this amount is for wages, while approximately two-thirds is for penalties and interest. *Id.* There also are some

uncertainties in Plaintiff's damages model. *See id.* at 7 (discussing assumptions underlying Plaintiff's damages model including averaging the amount of transit time from different hotels, assuming that transit time should calculated at double pay, and the timing of when buses would arrive and depart). Given the substantial risks identified above, and the uncertainties in damages, the $1.7 million dollar settlement appears reasonable.

The court finds the method of allocating wages among the class members to be reasonable, given the need for economic administration of the settlement.

The extent of discovery and stage of proceedings also support the settlement agreement. As discussed in the preliminary approval order, the parties engaged in discovery with U.S. Nursing, producing thousands of pages of documents. The settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of a private mediator.

Finally, the reaction of class members to the proposed settlement also favors approval. No one has objected to the settlement, and only one class member opted out.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted.

## V. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

The record establishes that counsel served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8). *See* Affidavit, ECF No. 39.

## VI. ATTORNEY'S FEES AND COSTS

### A. Legal Standard

Rule 23(h) of the Federal Rules of Civil Procedure provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Attorney's fees provisions included in proposed class action agreements must be "fundamentally fair, adequate and reasonable." *Staton* v. Boeing, 327 F.3d 938, 964 (9th Cir. 2003).

In the Ninth Circuit, the proper method for determining reasonable attorney's fees usually is the "lodestar method." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*,

815 F.2d 1258, 1262 (9th Cir. 1987). The lodestar method is appropriate in class actions. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Staton* 327 F.3d at 968. To apply the lodestar method, the trial court first calculates attorney's fees by multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). In setting the rate, the district court also should consider the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). The *Kerr* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

After deciding the hourly rate, the court then examines the applicant's contemporaneously-recorded billing records and excludes from the lodestar amount hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Then, in appropriate cases, the district court may adjust the lodestar figure based upon the *Kerr* factors that were not subsumed into the initial lodestar calculation. *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).

The lodestar may include a risk multiplier to enhance the fees under certain circumstances, in which a court considers "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.*, 150 F.3d at 1026. The customary range for multipliers is between 1.0 and 4.0. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (describing appendix to opinion, finding a range of multipliers in common fund cases "of 0.6-19.6, with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range").

Alternatively, in "common fund cases," a court has discretion to award attorney's fees as a percentage of the common fund. *Staton*, at 967-968. In a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of

the class and can encouraged unjustified work and protracting the litigation. *See In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Additionally, the percentage-of-the-fund method is appropriate where the amount of the settlement is fixed without any reversionary payment to the defendant. *See Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16,2011). In the Ninth Circuit, the "benchmark" for attorney's fees in common fund class actions is 25% of the common fund. *Staton*, 327 F.3d at 968. "The benchmark percentage should be adjusted . . . when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (explaining that the rate ultimately selected must be supported by findings that take into account all of the circumstances of the case).

**B. Plaintiff's Requested Attorney's Fees**

Plaintiff asserts that she is the prevailing party in this action and is entitled to an award of attorney's fees pursuant to California Labor Code sections 218.5, 1194, and 2699, as well as California Code of Civil Procedure section 1021.5. *See* Fees Motion, ECF No. 42 at 4. The fees, itemized by attorney and hours billed, are as follows.

| Attorney/Legal Assistant* | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Jonathan E. Gertler | 75.5 | $725 | $54,737.50 |
| Dan L. Gildor | 204.4 | $550 | $112,420.00 |
| Jeremy Graham | 35.2 | $415 | $14,608.00 |
| Lori Andrus | 83.9 | $675 | $56,632.50 |
| Jessica Moy | 46.7 | $395 | $18,446.50 |
| Kelli Good* | 20.8 | $265 | $5,512.00 |
| Michael A. Maxey Jr. | 49.8 | $425 | $21,165.00 |
| Kit Pummer* | 16.1 | $100 | $1,610.00 |
| **Total** | | **532.4** | **$285,131.50** |

C 12-4466 LB
ORDER
8

*See id.* at 10-11. Plaintiff's requested award of $450,000.00 reflects a multiplier of slightly more than 1.5 times the lodestar amount. *Id.* at 12. Defendant has not opposed Plaintiff's motion. *See generally* Docket.

Applying the lodestar factors, the court finds that counsels' (and their legal assistants') hourly rates are reasonable. Counsel assumed substantial risk, litigated on a contingent basis, and are seeking fees that are fair considering those factors. They provide evidence demonstrating that their hourly rates are reasonable given their experience and qualifications and that courts have awarded some of their rates in the past. *See* Gertler Decl., ECF No. 42-1 at 1; Maxey Decl., ECF No. 42-1 at 59; Andrus Decl., ECF No. 42-2 at 3; *see also* Order Granting Final Settlement Approval, *Keck v. Bank of Am.*, No. C 08-01219 CRB, ECF No. 68 (N.D. Cal. Apr. 15, 2008) (approving Chavez & Gertler's rates); Final Approval Order, *Friedrichs v. BMW Financial Servs. LLC*, No. C 08-04486 PJH, ECF No. 61 (N.D. Cal. Jan. 21, 2010) (approving rates for different Chavez & Gertler attorneys as set forth at ECF No. 55-3).

The total hours here appear reasonable and counsel claim that they exercised billing judgment. Still, counsel did not submit their time records for review, which the court would normally require before awarding fees. Here, however, the attorney's fee award does not reduce the class settlement fund and U.S. Nursing does not object. Moreover, the parties negotiated a settlement of the class claims before ever broaching the issue of attorney's fees (except to agree that U.S. Nursing would not oppose a "reasonable" fee award). *See* Gertler Decl. ¶¶ 12-13. Because there was no conflict between Plaintiff's counsel and the class in negotiating the fee award, the court affords significant weight to the fact that U.S. Nursing does not oppose the motion. Accordingly, the court finds the lodestar amount reasonable.

The court also finds that the 1.5 multiplier is appropriate. Here, class counsel achieved significant results for the class, and they litigated the case efficiently. There were novel issues at play in this case that heightened the risk of litigating on a contingent basis. *See* Fees Motion at 13. In addition to the large monetary award agreed to in the settlement, U.S. Nursing has begun to pay class members on a daily basis and has stopped its practice of deducting 30 minutes of work time whenever a class member has not indicated a meal period on their time sheet. *See id.* at 4.

1  Moreover, if this were a common fund case, the attorney's fee award would be 21% of the common
2  fund – less than the benchmark award.

### C. Costs

Class counsel also explain and document that they incurred $10,713.02 in litigation costs, but they do not seek a separate costs award. *See* Fees Motion, ECF No. 42 at 2, 12; Gertler Decl. Ex. 3, ECF No. 42-1 at 57; Andrus Decl. Ex. C, ECF -No. 42-2 at 19; Maxey Decl. Ex. 4, ECF No. 42-1 at 61. Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Class counsel's costs appear reasonable, but because they explain that "the requested award of $450,000 is intended to compensate counsel for both fees and costs," the court need not inquire further.

Accordingly, the court **GRANTS** Plaintiff's unopposed request for an award of $450,000.00 in attorney's fees and costs that is separate from the class settlement fund.

### VII. INCENTIVE AWARD

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, Ms. Bolton seeks a $10,000 inventive award. In comparison, the average settlement recovery is estimated to be $595.91. *See* Baldwin Decl., ECF No. 44 at 4. Still, the largest

C 12-4466 LB
ORDER
10

1 settlement recovery is estimated to be $3,602.67, and 204 class members will receive more than
2 $1,500. *Id.* Because there are many relatively large settlement awards, the court finds that the
3 $10,000 inventive award requested does not misalign the settlement interests. Finally, Ms. Bolton
4 explains that she has assisted throughout the litigation and was prepared to be deposed in support of
5 the case. Under all the circumstances, including the collective outcome, the court approves the
6 incentive award.

## CONCLUSION

For the reasons discussed, the court approves the settlement in the total amount of $1,700,000.00, allocated as described above (including a $10,000 incentive award for Ms. Bolton, a $15,000 payment to the California Labor and Workforce Development Agency, and $27,917.61 to the claims administrator), and awards $450,000.00 in attorney's fees and costs to the class counsel. This disposes of ECF Nos. 159 and 160.

**IT IS SO ORDERED.**

Dated: October 18, 2013

_____
LAUREL BEELER
United States Magistrate Judge